[No. C067277. Third Dist. Apr. 9, 2012.]

REBECCA BUSH, an Incompetent Person, etc., et al., Plaintiffs and Respondents, v.
HORIZON WEST et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, IIIB, IV, and V of the Discussion.

## COUNSEL

Perry, Johnson, Anderson, Miller & Moskowitz, David F. Beach and Deborah S. Bull for Defendants and Appellants Horizon West Healthcare, Inc., Horizon West Healthcare of California, Inc., Sierra Health Care Center, Inc., and Lorri Ann Badten.

Hooper, Lundy & Bookman and Scott Jason Kiepen for Defendant and Appellant Golden Legacy, Inc.

Clement & Saraiva, Clement & Associates, Lesley Ann Clement; and Edward P. Dudensing for Plaintiffs and Respondents.

## OPINION

**ROBIE, J.**—In this action, plaintiff Rebecca Bush sued the operators of a skilled nursing facility for elder abuse (among other causes of action) based on their alleged neglect in providing her care and treatment at the facility. In the same complaint, Bush's daughter, plaintiff Charmaine Jennings, sued the same defendants for negligent infliction of emotional distress based on her alleged observation of the harm they caused Bush through their neglect. When defendants moved to compel arbitration pursuant to a written agreement with Bush, the trial court exercised its discretion under Code of Civil Procedure section 1281.2, subdivision (c) (section 1281.2(c)) to deny their motions because of the possibility of conflicting rulings between Bush's claim for elder abuse, which was subject to arbitration, and Jennings's claim for negligent infliction of emotional distress, which was not.[1]

On defendants' appeals, we find no error in the trial court's decision. In the published portion of our opinion, we conclude that Jennings is not bound by the arbitration agreement based on our Supreme Court's recent decision in *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 [114 Cal.Rptr.3d 263, 237 P.3d 584]. In the unpublished portion of our opinion, we conclude the application of section 1281.2(c) was not preempted here by the Federal Arbitration Act (the federal Act) (9 U.S.C. § 1 et seq.), and we reject the argument that the parties agreed section 1281.2(c) would not apply. We also conclude that Jennings was not bound by the arbitration agreement based on the doctrine of equitable estoppel, we find no abuse of discretion in the trial court's determination that there was a possibility of conflicting rulings, and we decline to overturn the trial court's ruling based on "public policy."

### FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2010, Bush, by and through her daughter and guardian ad litem, Jennings, commenced this action by filing a complaint containing

---

[1] Section 1281.2(c) provides as follows:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

[¶] . . . [¶]

"(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition. This subdivision shall not be applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295."

causes of action for elder abuse, fraud, and violations of the Patients Bill of Rights (Health & Saf. Code, § 1430, subd. (b)). The complaint alleged that in April 2007, when she was 79 years old, Bush was admitted to a 24-hour skilled nursing facility—defendant Sierra Health Care Center, Inc. (Sierra).[2] The complaint further alleged that beginning in 2008 and continuing until she left Sierra in May 2009, Bush "suffered severe, pervasive neglect and her physical and mental condition declined precipitously" because of "extreme cost-cutting measures" at the facility. The fraud cause of action was based on the allegation that the corporate defendants concealed their inability and lack of intention to provide legally adequate care to Bush.

In addition to appearing in the action as Bush's guardian ad litem, Jennings also appeared as a plaintiff in her own right, asserting a cause of action for negligent infliction of emotional distress based on allegations that she visited Bush daily and "observ[ed] the horrendous consequences of Defendants' utter neglect, indifference, and inhumane treatment toward her mother."

Defendants filed their answers to the complaint in September 2010. The following month, Bush moved for trial preference, which the court granted, ordering that trial be set on or before March 23, 2011.

In December 2010, Horizon and Golden Legacy each moved to compel arbitration based on an arbitration agreement between Bush and Sierra that Jennings had signed in May 2007 as Bush's legal representative.[3] Plaintiffs opposed the motions on numerous grounds. Among other things, they argued that the court should refuse to compel arbitration under section 1281.2(c) because of the possibility of conflicting rulings on common issues of law and fact.

---

[2] The complaint also named as defendants Horizon West, Inc.; Horizon West Healthcare, Inc.; Horizon West Healthcare of California, Inc.; and Golden Legacy, Inc. The complaint alleged that these defendants (which the complaint identified jointly as Horizon West) "owned, managed, controlled, maintained and/or operated" Sierra. Also named as a defendant was Lorri Ann Badten, who was allegedly Horizon West's director of operations.

In its answer to the complaint, Golden Legacy noted that it was formerly known as Horizon West, Inc. Thus, there are five defendants in this case: (1) Sierra; (2) Horizon West Healthcare; (3) Horizon West Healthcare of California; (4) Golden Legacy; and (5) Badten.

Although Golden Legacy was initially represented by the same attorneys as the other three corporate defendants, Golden Legacy later retained a separate law firm and since then has filed papers separately from the other three corporate defendants, including on appeal. Meanwhile, in the trial court the other three corporate defendants filed papers separately from Badten—up to and including their notice of appeal—but on appeal they have filed a joint brief with Badten.

To make the appropriate distinctions between the various groupings of the defendants, we will use the term "Horizon" to refer jointly to the three corporate defendants other than Golden Legacy, we will use the term "the corporate defendants" to refer jointly to all four of the corporate defendants, and we will use the term "defendants" to refer jointly to all five defendants.

[3] Badten filed joinders in both motions.

In January 2011, the trial court exercised its discretion under section 1281.2(c) to deny the motions to compel arbitration because of the possibility of conflicting rulings between the arbitration of Bush's claims and a trial of Jennings's claim. In the court's view, "[a]ll causes of action by both Plaintiffs are related to the Defendants' care provided to Plaintiff Bush and are premised upon similar if not identical facts. Indeed, if Bush's claims proceed to arbitration, an arbitrator could conclude that Defendants did not fail to provide adequate care and thus could deny relief. However, a trial court could find that Defendants are liable for inflicting emotional distress upon Plaintiff Jennings based on her allegations that she suffered emotional distress as a direct result of 'Defendants' neglect and maltreatment of [Bush] . . . .' "

Defendants timely appealed. (Code Civ. Proc.,[4] § 1294, subd. (a).)

## DISCUSSION

Defendants offer numerous arguments as to why the trial court erred or abused its discretion in refusing to compel arbitration. We address each argument in turn.

### I, II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

#### *Jennings as a Third Party to the Arbitration Agreement*

■ For section 1281.2(c) to apply, "[a] party to the arbitration agreement" must also be "a party to a pending court action or special proceeding *with a third party*, arising out of the same transaction or series of related transactions" and there must be "a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2(c), italics added.) For purposes of section 1281.2(c), a third party is a party who is not bound by the arbitration agreement. (See, e.g., *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521 [81 Cal.Rptr.3d 892].)

Defendants argue that the trial court erred in determining Jennings was a third party to the arbitration agreement between Sierra and Bush. This argument has two aspects, which we address in turn.

---

[4] All further section references will be to the Code of Civil Procedure.

[*] See footnote, *ante*, page 924.

A

*Ruiz v. Podolsky*

Horizon and Badten argue first that "Jennings is equitably held subject to the arbitration agreement, because there is a sufficient identity of parties." In particular, they focus on the fact that Jennings (1) is Bush's daughter, (2) is also her designated agent to make health care decisions, and (3) acted as Bush's legal representative for purposes of entering into the arbitration agreement with Sierra. In support of this argument, Horizon and Badten cite our Supreme Court's recent decision in *Ruiz v. Podolsky, supra*, 50 Cal.4th 838. Golden Legacy likewise relies on *Ruiz* to argue that Jennings is bound by the arbitration agreement.

*Ruiz* expressly involved the following issue: "when a person seeking medical care contracts with a health care provider to resolve all medical malpractice claims through arbitration, does that agreement apply to the resolution of wrongful death claims, when the claimants are not themselves signatory to the arbitration agreement?" (*Ruiz v. Podolsky, supra*, 50 Cal.4th at p. 841.) The Supreme Court held that "all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295, at least when, as here, the language of the agreement manifests an intent to bind these claimants. This holding carries out the intent of the Legislature that enacted section 1295 and related statutes." (*Ibid.*)

Without delving into the *Ruiz* opinion further, it is apparent that the Supreme Court's holding there does not apply here because this case does not involve a wrongful death claim by Jennings predicated on medical malpractice, but instead involves a claim of negligent infliction of emotional distress predicated on alleged elder abuse. Apparently recognizing this problem, Horizon and Badten devote only a paragraph to this particular argument, making no attempt to explain how the decision in *Ruiz* can be read to apply to the facts before us. Golden Legacy, on the other hand, devotes eight pages to arguing that *Ruiz* governs here. Having considered that argument, however, we find no merit in it.

The arbitration agreement in *Ruiz*, signed by the patient and the defendant surgeon, "provided for the arbitration of any malpractice claims, consistent with the language of section 1295 . . . . The agreement further provided that it was the intention of the parties 'that this agreement binds all parties whose claims may arise out of or relate to treatment or service provided by the physician including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to the claim.' Elsewhere the agreement specifically provided for arbitration of

wrongful death and loss of consortium claims." (*Ruiz v. Podolsky, supra*, 50 Cal.4th at pp. 841–842.) After the patient died, the patient's wife and four children sued the surgeon for medical malpractice and wrongful death. (*Id.* at p. 842.) The trial court granted the surgeon's petition to compel arbitration of the claims asserted by the patient's wife, but refused to compel arbitration of the children's claims. (*Ibid.*) The Court of Appeal agreed. (*Ibid.*)

On review, the California Supreme Court began by noting that "the case requires us in some sense to reconcile the special health care arbitration statute with the wrongful death statute . . . ." (*Ruiz v. Podolsky, supra*, 50 Cal.4th at p. 842.) The court went on to explain, among other things, that "section 1295, subdivision (a) contemplates arbitration agreements to resolve disputes concerning 'professional negligence,' " and " '[p]rofessional negligence' is defined in section 1295, subdivision (g)(2) as 'a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury *or wrongful death* . . . .' " (*Id.* at p. 844.) After surveying the extant case law, the court concluded that it was "persuaded that section 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions." (*Ruiz*, at p. 849.)

Golden Legacy contends *Ruiz* should be read to hold "that section 1295, when construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in *actions for personal injuries*, such as Jennings'[s] [negligent infliction of emotional distress] claim." (Italics added.) We find at least two flaws in that argument. First, section 1295 has no bearing here because, as we have explained, *no one*—that is, neither Bush nor Jennings—has asserted any claim against defendants for medical malpractice. The fact that the arbitration agreement was drafted to comply with that statute does not somehow make that statute applicable in a case like this where medical malpractice is not asserted. As we explained in the previous unpublished part of this opinion, section 1295 encourages the arbitration of medical malpractice disputes and does not apply where no such claim is asserted.

Second, *Ruiz* dealt specifically with whether a *wrongful death claim* brought by the patient's heirs was subject to an arbitration agreement between the patient and the surgeon where the agreement specifically provided that it applied to wrongful death claims and in light of the fact that section 1295 specifically encompasses wrongful death claims. In the end, all the Supreme Court held was that, under those circumstances, the arbitration agreement could be enforced, and "a contrary holding would defeat [the surgeon's] reasonable contractual expectations." (*Ruiz v. Podolsky, supra*, 50 Cal.4th at p. 854.)

■ Here, it is true the arbitration agreement specifically provides that it binds "the parties hereto, including the heirs, representative, executors, administrators, successors, and assigns of such parties." But in bringing her claim for negligent infliction of emotional distress, Jennings is not acting as a representative or heir of Bush; she is acting for herself, pursuing her own claim based on the emotional distress she allegedly sustained as a consequence of witnessing the injury to her mother caused by defendants' alleged misconduct. Nothing in section 1295 or the arbitration agreement here compels the conclusion that the Supreme Court's decision in *Ruiz* applies to a case like this, where neither medical malpractice nor wrongful death is at issue. Accordingly, we reject defendants' arguments that Jennings was not a third party to the arbitration agreement under *Ruiz*.

B

*Equitable Estoppel*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV, V\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The orders denying the motions to compel arbitration are affirmed. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Raye, P. J., and Mauro, J., concurred.

On April 30, 2012, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied July 18, 2012, S203130. Baxter, J., was of the opinion that the petition should be granted.

\* See footnote, *ante*, page 924.