[No. E054472. Fourth Dist., Div. Two. Jan. 4, 2013.]

NORMA DANIELS, Plaintiff and Respondent, v.
SUNRISE SENIOR LIVING, INC., et al., Defendants and Appellants.

## Counsel

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Bryan R. Reid, Brittany H. Bartold and Lisa W. Cooney for Defendants and Appellants.

Law Offices of Michael F. Moran, Michael F. Moran and Alex H. Feldman for Plaintiff and Respondent.

---

**OPINION**

**KING, J.—**

## I.  INTRODUCTION

Plaintiff Norma Daniels sued Sunrise Senior Living, Inc., and other defendants,[1] the owners and operators of a residential care facility for the elderly (RCFE)[2] known as Sunrise of Hemet (Sunrise), for elder abuse and related claims (the survivor claims) as the successor in interest of her late mother, Margaret Barcenas. (Code Civ. Proc., §§ 377.20, 377.31.)[3] Daniels alleged that Barcenas, who was elderly and suffered from "dementia with psychosis," died as a result of receiving inadequate care at Sunrise. In her personal capacity, Daniels alleged an additional cause of action against defendants for the wrongful death of Barcenas. (§ 377.60.)

Defendants petitioned the trial court to compel arbitration of all of the claims pursuant to the arbitration clause in a "residency agreement" Daniels entered into with Sunrise Senior Living, Inc., as Barcenas's attorney in fact, but not in her personal capacity. Under the arbitration clause, all claims related to the care Barcenas received at Sunrise are subject to binding arbitration, and the clause is expressly binding on Barcenas's heirs and representatives. The court denied the petition and refused to order any of the claims to arbitration on the grounds Daniels was a third party to the agreement and could not be compelled to arbitrate her wrongful death claim, and there was a possibility of conflicting rulings on common issues of fact and law if the survivor claims were arbitrated but the wrongful death claim was not. (§ 1281.2, subd. (c) (herein § 1281.2(c)).) Defendants appeal. (§ 1294, subd. (a).)

---

[1] In addition to Sunrise Senior Living, Inc., defendants include Sunrise Senior Living Services, Inc., doing business as Sunrise of Hemet, Sunrise Senior Living Management, Inc., Eight Pack Management Corp., and Kent Goforth. The complaint alleges that defendants collectively owned and operated Sunrise of Hemet, directed the conduct complained of in the complaint, and acted as the agents of each other in committing the acts alleged in the complaint.

[2] An RCFE is a housing arrangement chosen voluntarily by the resident where 75 percent of the residents are 60 years of age or older, and where varying levels of care and supervision are provided. (Cal. Code Regs., tit. 22, § 87101, subd. (r)(5).)

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

We find no error of law or abuse of discretion in the order refusing to compel arbitration of any of the claims. We disagree that Daniels should have been compelled to arbitrate her personal wrongful death claim along with the survivor claims pursuant to the rationale articulated in *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477] (*Herbert*) and *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 [114 Cal.Rptr.3d 263, 237 P.3d 584] (*Ruiz*) [nonsignatories to arbitration agreement must arbitrate their wrongful death claims against health care provider when decedent agreed to arbitrate medical malpractice claims pursuant to § 1295, the wrongful death claims are based on medical malpractice, and the agreement was intended to bind wrongful death claimants].) As we explain, *Herbert* and *Ruiz* have no bearing on third party wrongful death claims outside the context of section 1295. We also conclude that the court did not abuse its discretion in determining there was a possibility of conflicting rulings on common questions of law and fact if the survivor claims but not the wrongful death claim were ordered to arbitration. (§ 1281.2(c).)

## II.   FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Allegations of the Complaint*

At the age of 92 in December 2009, Barcenas became a resident of Sunrise with a diagnosis of "dementia with psychosis." She was assigned to a "non-ambulatory" suite and enrolled in a program designed for residents with dementia. Her individualized service plan required Sunrise to assess her for skin breakdown and notify a health care consultant if skin tears or redness were noted. Sunrise staff was also responsible for washing Barcenas's lower legs, feet, and bottom.

While living at Sunrise during early 2010, Barcenas developed pressure sores on both of her heels and ankles, and her health deteriorated. The pressure sores went unnoticed and untreated until April 2010, when Daniels brought them to the attention of Sunrise staff. In May 2010, Barcenas was taken to a hospital emergency room where tests revealed she had septic shock, pneumonia, dehydration, and a staph infection. She was hospitalized for two months, and was transferred to a skilled nursing facility in July 2010. She never fully recovered from her injuries and died at the skilled nursing facility in February 2011 at the age of 93.

Daniels filed suit against defendants in her representative capacity as Barcenas's successor in interest (Code Civ. Proc., §§ 377.11, 377.20), alleging claims for elder abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.), negligence,

breach of contract, and willful misconduct (the survivor claims). In her personal capacity as Barcenas's heir, Daniels alleged an additional cause of action for the wrongful death of Barcenas. (Code Civ. Proc., § 377.60, subd. (a).)

### B. *The Arbitration Clause in the Residency Agreement*

Upon Barcenas's admission to Sunrise, Daniels signed a residency agreement with defendant Sunrise Senior Living Services, Inc., as Barcenas's attorney in fact, pursuant to a durable general power of attorney and a durable power of attorney for health care. The residency agreement includes an arbitration clause (the arbitration clause), which states that: "By entering into this Agreement, you agree that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at [Sunrise] shall be resolved by . . . binding arbitration . . . . The arbitration clause binds all parties to this Agreement and their spouse, heirs, representatives, executors, administrators, successors, and assigns, as applicable. . . ."[4]

### C. *The Petition to Compel Arbitration and the Trial Court's Ruling*

Daniels refused defendants' request to submit the survivor and wrongful death claims to arbitration. (§ 1281.2(c).) Defendants then petitioned the trial court to compel Daniels to arbitrate all of the claims pursuant to the arbitration clause in the residency agreement. Defendants argued that by signing the agreement, Daniels effectively agreed to arbitrate *all* claims arising out of Barcenas's residency at Sunrise, including her personal wrongful death claim.

As indicated, the trial court refused to order any of the claims to arbitration. The court concluded that Daniels's wrongful death claim was not arbitrable because she did not sign the residency agreement in her personal capacity and was therefore a third party to the agreement. (§ 1281.2(c).) The

---

[4] The full text of the arbitration clause states: "By entering into this Agreement, you agree that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at this Community shall be resolved by submission to neutral, binding arbitration; except that any claim involving unlawful detainer actions (eviction) or any claims that are brought in small claims court shall not be subject to arbitration unless both parties agree to arbitrate such proceedings. Both parties give up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration. The arbitration shall be conducted in [Riverside] County, California, by a single neutral arbitrator selected as provided in the California Code of Civil Procedure, unless otherwise mutually agreed. In reaching a decision, the arbitrator shall prepare findings of fact and conclusions of law. Each party shall bear its own costs and fees in connection with the arbitration. This arbitration clause binds all parties to this Agreement and their spouse, heirs, representatives, executors, administrators, successors, and assigns, as applicable. After termination of this Agreement, this arbitration clause shall remain in effect for the resolution of all claims and disputes that are unresolved as of that date."

court also determined that there was a possibility of conflicting rulings on common questions of law and fact if the survivor claims were ordered to arbitration but the wrongful death claim was not. (*Ibid.*) This appeal followed. (§ 1294, subd. (a).)

## III.   DISCUSSION

Defendants claim the trial court erroneously determined that Daniels could not be compelled to arbitrate her wrongful death claim because she is a third party to the residency agreement and its arbitration clause. (§ 1281.2(c).) They also claim the court abused its discretion in concluding there was a possibility of conflicting rulings on common questions of law and fact if the survivor claims but not the wrongful death claim were ordered to arbitration. (*Ibid.*) We find no merit in these claims.

### A.   *Section 1281.2(c) and the Standard of Review*

█ Under section 1281.2(c), a court may stay or refuse to compel arbitration of all or part of an arbitrable controversy when: (1) "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions," and (2) "there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2(c).)[5] For purposes of the statute, a third party is one who is neither bound by nor entitled to enforce the arbitration agreement. (*Thomas v. Westklake* (2012) 204 Cal.App.4th 605, 612 [139 Cal.Rptr.3d 114].) Section 1281.2(c) " 'addresses the peculiar situation that arises when a

---

[5] Section 1281.2 provides that: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶]

"(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition. This subdivision shall not be applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295. [¶] . . . [¶]

"If the court determines that a party to the arbitration is also a party to litigation in a pending court action . . . with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action . . . ; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action . . . ."

controversy also affects claims by or against other parties not bound by the arbitration agreement.' " (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [25 Cal.Rptr.3d 540, 107 P.3d 217].)

Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512 [105 Cal.Rptr.3d 585].) By contrast, the ultimate determination whether to stay or deny arbitration based on the possibility of conflicting rulings on common questions of law or fact is reviewed for an abuse of discretion. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406 [117 Cal.Rptr.3d 310] (*Laswell*).) "The court's discretion under section 1281.2, subdivision (c) does not come into play until it is ascertained that the subdivision applies, which requires the threshold determination of whether there are nonarbitrable claims against at least one of the parties to the litigation (e.g., a nonsignatory)." (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1288, fn. 6 [63 Cal.Rptr.3d 787]; see *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 709 [111 Cal.Rptr.3d 876].)

B.  *Daniels Is a Third Party to the Arbitration Agreement and May Not Be Compelled to Arbitrate Her Wrongful Death Claim*

■ Daniels's wrongful death claim is personal to her and lies independent of the survivor claims. "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 'creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived. [Citations.]' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283 [87 Cal.Rptr.2d 222, 980 P.2d 927]; see *San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1551 [53 Cal.Rptr.3d 722] ["Because a wrongful death action compensates an heir for his or her own independent pecuniary losses, it is one for 'personal injury to the heir.' "].)

As a general rule, a party cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration. (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142 [119 Cal.Rptr.2d 489] (*Buckner*); *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358] ["The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."].) Though Daniels did not sign the residency agreement in her personal capacity but only as Barcenas's agent or attorney in fact, defendants argue that Daniels effectively agreed to arbitrate her wrongful death claim because (1) she signed the

residency agreement; (2) the arbitration clause of the agreement encompasses all claims "arising from or related to" the care and services Barcenas received at Sunrise; (3) the wrongful death claim is based on the inadequate care Barcenas allegedly received at Sunrise; and (4) the arbitration clause is binding on Barcenas's heirs, including Daniels.

In concluding that Daniels was a third party to the residency agreement and not bound by its arbitration clause, the trial court principally relied on *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469 [58 Cal.Rptr.3d 585] (*Fitzhugh*). We agree that *Fitzhugh* is on point and persuasive. There, the surviving spouse and three adult children of Ruth Fitzhugh sued a convalescent care facility for her wrongful death. (*Id.* at pp. 471–472.) The surviving spouse signed two arbitration agreements with the facility as the decedent's "legal representative" and "agent," and both agreements were binding on the decedent's heirs. (*Id.* at p. 472.)

Even though the arbitration agreements were expressly binding on the decedent's heirs, the court concluded that the decedent's surviving spouse and adult children were not obligated to arbitrate their wrongful death claims because there was no evidence that the spouse signed the agreements in his personal capacity, and the adult children did not sign either agreement. (*Fitzhugh, supra*, 150 Cal.App.4th at p. 474.) There was therefore "no basis to infer" that the spouse or adult children "waived their personal right to jury trial on the wrongful death claim." (*Ibid.*) The same is true here. Because Daniels signed the residency agreement solely as Barcenas's agent and not in her personal capacity, there is no basis to infer that Daniels agreed to arbitrate her wrongful death claim. In context, the provision making the arbitration clause binding on heirs means only that the duty to arbitrate the survivor claims is binding on Barcenas and other persons who would assert the survivor claims on Barcenas's behalf, namely, her "spouse, heirs, representatives, executors, administrators, successors, and assigns, as applicable." The agreement does not indicate an intent to bind third parties with claims independent of the survivor claims, such as wrongful death claimants.

There are exceptions to the general rule that third party nonsignatories to an arbitration agreement cannot be bound by it. (See, e.g., *Buckner, supra*, 98 Cal.App.4th at p. 142 [agents can bind principals; spouses can bind each other; and parents can bind minor children]; see also *Suh v. Superior Court, supra*, 181 Cal.App.4th at p. 1513 [listing additional exceptions including estoppel].) Defendants do not claim that any of these exceptions apply, however. Instead they argue that Daniels's wrongful death claim should be deemed subject to the arbitration clause based on the practical considerations and principles articulated in *Herbert, supra*, 169 Cal.App.3d 718 and *Ruiz, supra*, 50 Cal.4th 838. As we explain, these cases are distinguishable because both involved arbitration agreements governed by section 1295.

The decedent in *Ruiz* signed an arbitration agreement with his physician pursuant to section 1295,[6] agreeing to arbitrate professional negligence (i.e., medical malpractice) claims arising out of the physician's treatment of the decedent's fractured hip. (*Ruiz, supra*, 50 Cal.4th at p. 841.) The agreement was binding on " 'all parties whose claims may arise out of or relate to treatment or service provided by the physician including any spouse or heirs of the patient and any children.' " (*Id.* at pp. 841–842.) The agreement was thus intended to bind third party wrongful death claimants to the extent their claims were based on the treatment or services provided by the physician to the decedent. The wife and four adult children of the decedent filed an action against the physician, alleging claims for medical malpractice and wrongful death. They claimed that the physician failed to adequately identify and treat the decedent's hip fracture, resulting in complications and his eventual death. (*Id.* at p. 842.)

At issue in *Ruiz* was whether the wife and four adult children were bound by the decedent's arbitration agreement with the physician. Following an extensive analysis of the extant case law including *Herbert*, the *Ruiz* court concluded that wrongful death claimants are bound by agreements to arbitrate medical malpractice claims entered into between the decedent and a health care provider pursuant to section 1295, "at least when . . . the language of the agreement manifests an intent to bind [the third party wrongful death] claimants." (*Ruiz, supra*, 50 Cal.4th at pp. 841, 849.)

*Ruiz* is based squarely on section 1295, which governs agreements to arbitrate professional negligence or medical malpractice claims in medical services contracts with health care providers. As explained in *Ruiz*: " 'Section 1295 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). . . . The purpose of section 1295 is to encourage and facilitate arbitration of medical malpractice disputes,' " because the arbitration of these disputes "furthers MICRA's goal of reducing costs in the resolution of malpractice claims and therefore malpractice insurance premiums." (*Ruiz, supra*, 50 Cal.4th at pp. 843–844, quoting *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 577–578 [53 Cal.Rptr.3d 887, 150 P.3d 764].)

---

[6] Subdivision (a) of section 1295 provides: "Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.' "

Construing section 1295 in light of its purpose, the *Ruiz* court concluded that the statute was "designed to permit patients who sign arbitration agreements [with health care providers to arbitrate professional negligence claims] to bind their heirs in wrongful death actions." (*Ruiz, supra,* at pp. 849–850.)

The *Ruiz* court reasoned that, though wrongful death claims are personal to the heir and compensate the heir for his or her own pecuniary loss resulting from the loss of the decedent (*Ruiz, supra,* 50 Cal.4th at p. 844), the purpose of section 1295 would be defeated if nonsignatory heirs were allowed to litigate wrongful death claims based on the professional negligence of a health care provider when the decedent agreed to submit his or her professional negligence claims to arbitration, and the arbitration agreement manifests an intent to bind heirs—i.e., wrongful death claimants (*Ruiz, supra,* at p. 851). The court thus concluded that section 1295 "intends to give patients and health care providers the option of entering into an agreement that will resolve all medical malpractice claims, including wrongful death claims, by arbitration" even when the heirs or holders of the wrongful death claims do not sign the arbitration agreement. (*Ruiz, supra,* at pp. 850–851.) In other words, the Legislature's intent in enacting section 1295 effectively supersedes two other competing principles: that wrongful death claims are independent actions accruing to the decedents' heirs, and that arbitration agreements are generally not binding on third party nonsignatories.

Defendants maintain that the rationale of *Ruiz* applies with equal force to wrongful death claims against RCFE's particularly when, as here, the decedent agreed to arbitrate her claims against the RCFE, the agreement is intended to bind heirs, and the heirs assert wrongful death claims based on the decedent's claims against the RCFE. We disagree. For one thing, the arbitration clause in Barcenas's residency agreement with Sunrise Senior Living, Inc., is not manifestly intended to bind third party wrongful death claimants. Rather, the clause is directed solely to "your" claims, that is, Barcenas's claims, and does not mention or allude to wrongful death or other third party claims. And in context, the statement that the arbitration clause "binds all parties to the Agreement and their spouse, heirs, representatives, executors, administrators, successors, and assigns as applicable" means only that the clause is binding on persons who would assert survivor claims on behalf of Barcenas.

More generally, we disagree that *Ruiz* should be extended to arbitration agreements not governed by section 1295, or that are entered into with a person other than a health care provider for claims other than medical malpractice. Defendants point out that an RCFE "is an extension of a health care facility," in that "[i]t offers varying levels and intensities of care and supervision . . . to enable elderly individuals to live independently. (Health &

Saf. Code, § 1569.2.)" They also point out that RCFE's "provide a variety of other health-related services to residents," and "many [RCFE's] employ or permit health care practitioners to provide care to residents." These arguments are unavailing.

Section 1295 includes safeguards designed to ensure that the patient will make an informed decision in agreeing to arbitration. The statute provides that an arbitration provision in a contract for medical services must appear in the first article of the contract, and be stated in the language prescribed in the statute. (§ 1295, subd. (a).) The statute also requires that a notice, set forth in 10-point boldface red type, be set forth immediately above the signature line warning the patient that by signing the agreement he or she is giving up his or her right to a jury trial on any issue of medical malpractice. (*Id.*, subd. (b).) The arbitration clause in Barcenas's residency agreement with Sunrise Senior Living, Inc., met neither of these requirements.

Nor is there any statutory analog to section 1295, applicable to RCFE's, or to claims other than professional negligence, that is designed to facilitate informed decisionmaking on the part of the resident in entering into the arbitration agreement as section 1295 does for persons who agree to arbitrate medical malpractice claims against licensed health care providers. Thus, with RCFE's there is a heightened danger, not present in the medical malpractice or health care provider context, that a person may enter into an arbitration agreement without knowingly waiving his or her right to a jury trial on their health care-related claims or their heirs' derivative wrongful death claims.

The court in *Bush v. Horizon West* (2012) 205 Cal.App.4th 924 [140 Cal.Rptr.3d 258] recently concluded that the rationale of *Ruiz* did not apply to the plaintiff's claim for negligent infliction of emotional distress against the operators of a skilled nursing facility based on its alleged negligence in providing care and treatment for the plaintiff's mother. The mother asserted a claim against the facility for elder abuse, among other causes of action. (*Bush v. Horizon West, supra,* at p. 926.) The court distinguished *Ruiz* on the ground that the case before it involved neither medical malpractice nor wrongful death. (*Bush v. Horizon West, supra,* at pp. 929–930.) Similarly here, Daniels's wrongful death claim is not based on medical malpractice, and the arbitration clause that Daniels signed as Barcenas's agent is not governed by section 1295.

Like *Ruiz, Herbert* involved professional negligence and wrongful death claims governed by section 1295. There, " 'the decedent husband was married and had eight children, three of whom were adults. The decedent, his wife, and their five minor children belonged to a group health plan, but the

three adult children did not. ([*Herbert, supra,* 169 Cal.App.3d] at p. 720.) The group plan required arbitration of all claims, including those by heirs. (*Ibid.*) After the husband died, his widow and all their children sued for wrongful death. (*Id.* at p. 721.) The medical plan sought arbitration, which the trial court ordered for the widow and minor children, but denied for the adult children. (*Ibid.*) [¶] On appeal, the *Herbert* court ordered the adult children to arbitrate their wrongful death claim. The court reasoned wrongful death is a single, joint and indivisible claim possessed by all survivors; it cannot be split, and must be tried in one forum. (*Herbert, supra,* 169 Cal.App.3d at pp. 722, 725.) Because the widow and minor children were indubitably obligated to arbitrate their claim, it was impractical, the court reasoned, to let the adult children pursue their claims outside arbitration. (*Id.* at p. 725.)' " (*Fitzhugh, supra,* 150 Cal.App.4th at pp. 474–475, fn. omitted, quoting *Buckner, supra,* 98 Cal.App.4th at p. 143.)

As stated in *Ruiz*: "Also critical to the *Herbert* court's determination was the enactment of section 1295, providing for arbitration of 'professional negligence' claims, including wrongful death." (*Ruiz, supra,* 50 Cal.4th at p. 846.) The *Herbert* court noted that: "Subdivisions (a) through (c) of [section 1295] set forth strict requirements for a valid medical malpractice arbitration provision in an individual contract for medical services. Although these requirements are inapplicable to so-called 'health care service plans' such as Kaiser (Code Civ. Proc., § 1295, subd. (f)), this is only because such plans must contain alternative means for notifying plan members of arbitration provisions in the plan agreements. Under section 1295, arbitration of wrongful death or other professional negligence claims may not be compelled if the requirements of that section are not met. It logically follows that arbitration provisions may be enforced where, as here, proper notice of the arbitration provision is given." (*Herbert, supra,* 169 Cal.App.3d at pp. 726–727, fn. omitted.) Thus, even though the decedent in *Herbert* had no authority to bind his adult children to the arbitration provision in the decedent's health care plan with Kaiser, the *Herbert* court concluded that the adult children were nonetheless bound by the agreement because it was governed by section 1295. (*Herbert, supra,* at pp. 722–727 ["sections 1283.1 and 1295 evidence a legislative intent that a patient who signs an arbitration agreement may bind his heirs to that agreement, regardless of whether the heirs are also members of the plan."].)

*Fitzhugh* and *Buckner*, which were decided before *Ruiz*, distinguished *Herbert* as involving multiple heirs (adult and minor children of the decedent) who would have split their wrongful death claims between different forums. (*Fitzhugh, supra,* 150 Cal.App.4th at p. 475; *Buckner, supra,* 98 Cal.App.4th at pp. 143–144.) Daniels is apparently Barcenas's only heir. Thus, as in *Fitzhugh* and *Buckner*, there is no danger here of splitting wrongful death claims among different forums. But even if there were, *Ruiz*

and *Herbert* are distinguishable because they involved arbitration agreements governed by and entered into pursuant to section 1295. In our view, this is the critical distinction between *Herbert* and *Ruiz* and the present case.

Apparently, *one of the two* arbitration agreements under consideration in *Fitzhugh* was an agreement to arbitrate medical malpractice claims against the convalescent care facility pursuant to section 1295. (*Fitzhugh, supra*, 150 Cal.App.4th at p. 472.) But *Fitzhugh* was decided before *Ruiz*, and the *Fitzhugh* court was not called upon to consider the question addressed in *Ruiz*—whether an agreement to arbitrate medical malpractice claims against a health care provider pursuant to section 1295 is binding on nonsignatory heirs asserting wrongful death claims based on the arbitrable malpractice claims. Nonetheless, in our view *Fitzhugh* remains good law as applied to arbitration agreements not governed by or entered into pursuant to section 1295, including the arbitration clause in Barcenas's residency agreement with Sunrise Senior Living, Inc.

C. *The Trial Court Did Not Abuse Its Discretion in Refusing to Compel Arbitration Based on the Possibility of Conflicting Rulings on Common Questions of Law and Fact in the Event the Survivor Claims, But Not the Wrongful Death Claim, Were Ordered to Arbitration (§ 1281.2(c))*

Lastly, defendants claim the trial court abused its discretion in refusing to compel arbitration on the ground there was a danger of inconsistent rulings on common questions of law or fact if the survivor claims but not the wrongful death claim were ordered to arbitration. (§ 1281.2(c).) There was no abuse of discretion.

Indeed, if the survivor claims are ordered to arbitration but Daniels's wrongful death claim was not, there is a possibility of inconsistent rulings on the claims given that they are based on the allegation that Barcenas received inadequate care at Sunrise. (*Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1319–1321 [91 Cal.Rptr.3d 777] [arbitration properly denied where conflicting rulings were possible if the claims against parties to the arbitration agreement were not tried in same action as identical claims against third party].) Because the trial court's discretionary ruling does not exceed the bounds of reason, we will not disturb it. (*Fitzhugh, supra*, 150 Cal.App.4th at p. 475; *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101 [284 Cal.Rptr. 255].)

Defendants point out that, as stated in *Laswell*, "the presence of a nonarbitrable cause of action is not sufficient by itself to invoke the trial court's discretion to deny arbitration under . . . section 1281.2, subdivision (c) . . . ." (*Laswell, supra*, 189 Cal.App.4th at p. 1409.) They also point out that, [t]he mere fact that some claims are arbitrable and some are not is

surely not the 'peculiar situation' meant to be addressed by section 1281.2(c) according to our Supreme Court." (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521 [81 Cal.Rptr.3d 892] (*RN Solution*), citing *Cronus Investments, Inc. v. Concierge Services, supra*, 35 Cal.4th at p. 393, fn. omitted.) Defendants take these courts' observations out of context.

Both *Laswell* and *RN Solution* are distinguishable because neither involved a third party to the arbitration agreement for purposes of Code of Civil Procedure section 1281.2(c). (*Laswell, supra*, 189 Cal.App.4th at pp. 1406–1408; *RN Solution, supra*, 165 Cal.App.4th at pp. 1519–1521.) Given the absence of a third party in *Laswell*, the court concluded that the plaintiff's attempt to avoid arbitration based on her assertion of a nonarbitrable claim for statutory remedies, including attorney fees and costs pursuant to Health and Safety Code section 1430, subdivision (b), was insufficient to avoid arbitration. (*Laswell, supra*, at p. 1409.) The court also noted out that the nonarbitrable statutory claim was based on the same allegations of improper care as the plaintiff's arbitrable claims and could be litigated in court following the arbitration. (*Ibid.*) Thus, the nonarbitrable claim in *Laswell* did not present a danger of inconsistent rulings but could have been easily tried following the arbitration of the plaintiff's elder abuse and related claims.

Here, by contrast, Daniels is a third party to the arbitration agreement, and the trial court reasonably determined there was a danger of inconsistent rulings of fact or law if the survivor claims were ordered to arbitration but the wrongful death claim was not.

Like *Laswell*, *RN Solution* involved no third parties but did involve arbitrable and nonarbitrable claims. (*RN Solution, supra*, 165 Cal.App.4th at pp. 1517, 1519–1521.) Given that there were no third parties, the *RN Solution* court concluded that the trial court erroneously refused to compel arbitration of the arbitrable claims pursuant to the "third party provisions of section 1281.2(c)." (*Id.* at p. 1521.) Instead, the trial court "should have first determined the arbitrable and nonarbitrable claims alleged in the complaint, ordered all of the arbitrable claims to arbitration, and stayed all such claims pending arbitration. The court would then have had discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c), only if it first determined that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary. *Absent that determination, the arbitrable claims would proceed to arbitration and the nonarbitrable claims would continue to be litigated in court unless a party moved successfully pursuant to section 1281.4, to stay further litigation of such nonarbitrable claims.*" (*Id.* at pp. 1521–1522, fns. omitted, italics added.) It is in this context—the absence of a third party and the trial court's lack of authority to refuse to order claims to arbitration under "the third party provisions" of section 1281.2(c)—that the court's comments in *RN Solution* must be understood.

## IV.  DISPOSITION

The order denying defendants' petition to compel arbitration is affirmed. Daniels shall recover her costs on appeal.

Ramirez, P. J., and Hollenhorst, J., concurred.

A petition for a rehearing was denied January 31, 2013, and appellants' petition for review by the Supreme Court was denied May 1, 2013, S208616.