Filed 3/11/14  White v. Dupont Residential Care CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LESLIE ROSEMAN WHITE et al., | |
| Plaintiffs and Respondents, | G048204 |
| v. | (Super. Ct. No. 30-2011-00516150) |
| DUPONT RESIDENTIAL CARE, INC. et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.

Beach Whitman Cowdrey, Thomas E. Beach, David W. Loy and Darryl C. Hottinger for Defendants and Appellants.

Valentine Law Group, Kimberly A. Valentine and Jennifer L. Turner for Plaintiffs and Respondents.

\*        \*        \*

Defendants Dupont Residential Care, Inc., doing business as Irvine Cottages (Irvine Cottages), its owner Jacqueline Dupont, and one of its employees Ellen Adaci, appeal from an order denying their petition to compel arbitration of this action for wrongful death and elder abuse. (Code Civ. Proc., § 1294, subd. (a); all further statutory references are to this code.) They argue the trial court erred in finding (1) their litigation conduct and the delay in petitioning for arbitration resulted in a waiver of the right to arbitrate the underlying action, and (2) plaintiffs Leslie Roseman White and Gail Israel are not bound by the agreement containing the arbitration clause because they did not sign it in their individual capacities. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On October 18, 2011, plaintiffs filed the original complaint in this action. It contained two causes of action. The first, "brought for the benefit of [Sylvia Jacoby's] heirs" was entitled "professional negligence – medical malpractice and wrongful death." (Capitalization omitted.) The second, by plaintiffs as Jacoby's "personal representatives," was entitled "reckless neglect & willful misconduct, abuse of an elder . . . ." (Capitalization omitted.)

The complaint alleged plaintiffs were Jacoby's daughters. In mid-October 2010, Irvine Cottages, a residential care facility, undertook the care of Jacoby, who was then 87 years old and suffering from dementia. Several days later, an employee administered medications to Jacoby in a negligent or reckless manner, resulting in her being taken to a hospital where she subsequently died from aspirational pneumonia.

Plaintiffs filed a first amended complaint in December stating causes of action for wrongful death and elder abuse. Its prayer sought damages for Jacoby's pain and suffering, plus an award of attorney fees.

2

In late January 2012, defendants Adaci and Irvine Cottages separately filed demurrers and motions to strike portions of the first amended complaint. Dupont filed a demurrer and motion to strike on the same grounds as Adaci and Irvine Cottages shortly thereafter. The demurrers and motions to strike sought to eliminate the requests for pain and suffering damages and attorney fees on the ground the first amended complaint "plead[] omissions in the provision of care," but "does not include any detailed factual allegations to support the elements of subjective culpability" essential for "the elder abuse cause of action." Plaintiffs filed opposition to each demurrer and motion to strike. On May 8th the trial court issued a ruling sustaining the demurrers with leave to amend and concluded that decision rendered the motions to strike moot.

Plaintiffs filed a second amended complaint a week later. The first count for wrongful death alleged they "are the rightful heirs of [Jacoby]" and brought "this action on behalf of [Jacoby] and themselves, as successors in interest of [Jacoby]." The second count for elder abuse alleged plaintiffs were "entitled to prosecute" as Jacoby's "survivors." (Bold omitted.)

In mid-August, defendants jointly answered the second amended complaint. One affirmative defense alleged plaintiffs or Jacoby "executed an enforceable agreement to arbitrate all claims" and they were "entitled to resolve all claims raised by [the] complaint through binding arbitration."

A week later, plaintiffs filed a motion to file a third amended complaint "to add additional facts and a request for punitive damages." On September 25, the trial court granted the motion and allowed the filing of a third amended complaint.

In December, defendants filed a petition to compel arbitration. The petition attached a copy of the residency and service agreement that plaintiff Roseman White signed for Jacoby as her "Authorized Representative." Paragraph 20 of the agreement, entitled, "Resident-Facility Binding Arbitration" (bold and some capitalization omitted) declared in part: "[A]ny dispute between Resident and Facility, including any action for

3

injury or death arising from negligence, intentional tort and/or statutory causes of action will be determined by submission to arbitration as provided by California law, and not by lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. [¶] . . . This Agreement is binding on [the] parties, including their personal representatives, successors, family member's heirs. [¶] . . . [B]y signing this contract, you are agreeing to have any issue of care or service decided by neutral arbitration and you are giving up your right to a jury or court trial. . . ." A copy of a durable power of attorney signed by Jacoby in 2005, appointing both plaintiffs as her "attorneys-in-fact" was also attached to the petition.

Asserting "[t]he[][] causes of action and claims against each defendant derive from the residency of Ms. Jacoby at Irvine Cottages," defendants sought "to enforce the arbitration agreement entered into by Ms. Jacoby through her durable power of attorney" by "compel[ling] plaintiffs to participate in arbitration." Defendants claimed "the delay in bringing [it] was due to plaintiffs[']" failure to add Jacoby as a plaintiff until the second amended complaint, arguing "[p]rior to th[at pleading] the arbitration agreement would arguably have been ineffective."

Plaintiffs opposed the petition on several grounds, including "unreasonable and prejudicial delay," the lack of a "valid agreement to arbitrate between the parties," and "the probability of inconsistent rulings on common issues of fact and law . . . ."

The trial court denied the petition. Citing the 14-month delay in filing it, defendants' demurrers and "12 separate discovery requests," plus the fact the reason given for the delay, i.e. the failure to add Jacoby "as a plaintiff . . . until later in the case," was "undercut by defendants' contention that the other plaintiffs in the action are bound by the arbitration clause," the court found defendants waived the right to compel arbitration. As for prejudice, it cited plaintiffs' "having to expend the time and expense of almost fully litigating the matter in court, only to lose their rights [to] a jury trial when the case is close to being ready for trial." Thus, the "[t]he long delay . . ., and the

4

extensive litigation engaged in to date largely defeat[ed] the 'strong policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'"

Second, citing *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, the trial court concluded the wrongful death cause of action was not subject to arbitration because "none of the decedent's heirs signed the [arbitration] agreement . . . in their individual capacities." Since the allegations of the wrongful death and elder abuse counts were "nearly identical," the court concluded there was "a strong possibility of conflicting rulings of law and fact."

## DISCUSSION

### 1. *Waiver*

Section 1281.2 declares a "court shall order the [parties to a written arbitration agreement] to arbitrate the controversy . . . unless" certain exceptions exist. One exception arises where the court finds "[t]he right to compel arbitration has been waived by the petitioner . . . ." (§ 1281.2, subd. (a).) Here, the trial court found this exception applied.

Defendants argue the trial court erred in so finding. They claim the delay seeking arbitration was justified by the manner in which plaintiffs pleaded the causes of action, their pre-petition activities were not inconsistent with arbitration, and there was no showing the delay caused prejudice to plaintiffs. We conclude the trial court did not err in finding defendants waived their right to invoke the arbitration clause.

"[N]o single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) However, the courts have recognized several factors relevant to whether a right to arbitrate has been waived. They include "''(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery

5

has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.""" (*Id.* at p. 1196.) On appeal, "[g]enerally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*Ibid.*)

Several of these factors support the trial court's ruling. Although based on the same grounds, defendants filed three separate demurrers and motions to strike against the first amended complaint. Plaintiffs had to separately oppose each pleading challenge. Defendants claim filing demurrers alone does not constitute a waiver of the right to invoke the arbitration clause. While possibly true (see *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1198), the trial court found defendants did much more, "litigating the case for over 14 months" during which they also "served 12 separate discovery requests" in addition to the demurrers.

Defendants also contend they "did not request arbitration close to the trial date. Again, the trial court expressly found to the contrary, noting "the case [wa]s close to being ready for trial." The lack of a scheduled trial date did not preclude the court from finding defendants' had substantially invoked their judicial remedies and unreasonably delayed in petitioning to arbitrate the survivor claim.

On appeal, defendants repeat their excuse for the delay in petitioning for arbitration; plaintiffs' failure to add Jacoby as a party until the second amended complaint. But as the trial court noted, this explanation was "undercut by defendants'

6

contention that the other plaintiffs in the action [Roseman White and Israel] are bound by the arbitration clause . . . ."

Finally, defendants' assert the delay did not cause prejudice to plaintiffs. The Supreme Court has recognized "whether or not litigation results in prejudice . . . is critical in waiver determinations." (*St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th at p. 1203.)  "Prejudice typically is found only where the petitioning party's conduct has substantially undermined th[e] important public policy [favoring arbitration] or substantially impaired the other side's ability to take advantage of [its] benefits and efficiencies," which are "'"a speedy and relatively inexpensive means of dispute resolution"' . . . intended '"to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing."'" (*Id.* at p. 1204.)

Defendants' argument is again contrary to the trial court's findings.  While "'courts will not find prejudice where the party opposing arbitration shows *only* that it incurred court costs and legal expenses[,]' . . . courts '"may consider . . . the expense incurred by that party from participating in the litigation process"' and the length of delay as factors bearing on whether the opposing party has been prejudiced.  [Citation.]  '[T]he critical factor in demonstrating prejudice is whether the party opposing arbitration has been substantially deprived of the advantages of arbitration . . . .'" (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 452.)  Here, the trial court expressly found the 14-month delay, plus "extensive litigation engaged in" to the point where the case was "close to being ready for trial," resulted in "defeat[ing] the 'strong policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'"

We conclude the record supports the trial court's finding defendants waived their right to invoke the arbitration clause under the facts of this case.

7

*2. Scope of the Arbitration Clause*

Another circumstance where a court can decline to enforce an arbitration agreement is if "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) Here, the trial court found this exception also applied. It concluded neither plaintiff "signed the [residency] agreement containing the arbitration clause in [her] individual capacit[y]." Further, "the allegations supporting" plaintiffs' separate "wrongful death" cause of action "are nearly identical" to the allegations of elder abuse claim covered by the arbitration clause, thereby "creat[ing] a strong possibility of conflicting rulings of law and fact."

Defendants challenge this finding, relying on the fact plaintiffs were both listed as Jacoby's attorneys-in-fact in her durable power of attorney and Roseman White signed the residency agreement as Jacoby's authorized representative on the basis of the power of attorney. In support of this argument they rely on the decisions in *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 and *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718. Plaintiffs disagree relying on the same decision cited by the trial court, *Daniels v. Sunrise Senior Living, Inc., supra,* 212 Cal.App.4th 674.

We conclude the trial court also properly relied on this ground to deny defendants' petition to compel arbitration. "Generally speaking, one must be a party to an arbitration agreement to be bound by it. 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration.'" (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142.)

In *Daniels*, the plaintiff sued a residential care facility alleging causes of action of elder abuse and wrongful death for failing to properly care for her 92-year-old mother and causing the mother's death. The defendant unsuccessfully petitioned to

compel arbitration under a clause in a residency agreement the plaintiff had signed "as [her mother's] attorney in fact, pursuant to a durable general power of attorney." (*Daniels v. Sunrise Senior Living, Inc., supra,* 212 Cal.App.4th at p. 678.) As here, the residency agreement's arbitration clause provided it "'binds all parties to this Agreement and their spouse, heirs, representatives, executors, administrators, successors, and assigns, as applicable. . . .'" (*Ibid*., fn. omitted.)

The Court of Appeal affirmed. "Because Daniels signed the residency agreement solely as [her mother's] agent and not in her personal capacity, there is no basis to infer that Daniels agreed to arbitrate her wrongful death claim. In context, the provision making the arbitration clause binding on heirs means only that the duty to arbitrate the survivor claims is binding on [the mother] and other persons who would assert the survivor claims on [the mother's] behalf . . . . The agreement does not indicate an intent to bind third parties with claims independent of the survivor claims, such as wrongful death claimants." (*Daniels v. Sunrise Senior Living, Inc., supra,* 212 Cal.App.4th at p. 681.)

Israel did not sign the residency agreement. While Roseman White did execute it, she did so only as Jacoby's "[a]uthorized [r]epresentative." Like *Daniels*, Roseman White relied on the authority given her by the durable power of attorney. Thus, she signed it as Jacoby's agent and not in her individual capacity. For this reason, defendants' contention that Roseman White is estopped to deny she is bound by the residency agreement's arbitration clause also lacks merit.

Defendants claim *Daniels* is distinguishable because, unlike this case, the arbitration clause at issue "did not refer to actions for wrongful death . . . ." However, one case on which *Daniels* relies, *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, involved arbitration agreements signed by a husband as his wife's "'Legal Representative/Agent,'" one of which covered "'any claim . . . arising out of the provision of services by the Facility . . . .'" (*Id.* at p. 472.) *Fitzhugh*

9

held the husband and the couple's two sons were not bound to arbitrate a wrongful death cause of action. "It is irrelevant to the wrongful death cause of action whether George Fitzhugh may have signed the arbitration agreements as the decedent's 'legal representative/agent.' Because there is no evidence that George Fitzhugh signed the arbitration agreements in his personal capacity, and because John and Frank Fitzhugh did not sign the arbitration agreements, there is no basis to infer that they waived their personal right to jury trial on the wrongful death claim." (*Id.* at p. 474.)

Defendants' reliance on *Ruiz v. Podolsky, supra,* 50 Cal.4th 838 and *Herbert v. Superior Court, supra,* 169 Cal.App.3d 718 is misplaced. Those cases dealt with arbitration agreements governed by section 1295 which applies to "[a]ny contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider . . . ." In *Ruiz* the Supreme Court recognized "'[s]ection 1295 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA)'" (*Ruiz v. Podolsky, supra,* 50 Cal.4th at p. 843), and its "purpose . . . is to encourage and facilitate arbitration of medical malpractice disputes" (*id.* at p. 844). Thus, it held, "all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295 . . . when . . . the language of the agreement manifests an intent to bind these claimants." (*Id.* at p. 841.) *Herbert* is to the same effect.

Here, the trial court relied on section 1281.2, subdivision (c). It declares in part, "[t]his subdivision shall not be applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295." (§ 1281.2, subd. (c).) Although defendants attempt to argue the services provided to Jacoby are similar to those covered by MICRA, Irvine Cottages clearly does not qualify as a health care provider under subdivision (g)(1) of section 1295, nor were the services it provided covered by that subdivision's definition of "'[p]rofessional negligence'" (§ 1295, subd. (g)(2)).

10

Thus, we conclude the trial court did not abuse its discretion in also relying on section 1281.2, subdivision (c) to deny defendants' petition to compel arbitration. In light of the foregoing, we need not discuss the parties' dispute over whether the arbitration clause in the residency agreement was invalid on the basis it is unconscionable.

DISPOSITION

The order denying appellants' petition to compel arbitration is affirmed. Respondents shall recover their costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.

11