Filed 3/30/22  Young v. Gash CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CORINA YOUNG, | |
| Plaintiff and Respondent, | E076573 |
| v. | (Super.Ct.No. PSC2003871) |
| DAVID GASH et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  David M. Chapman, Judge.  Affirmed.

Wolfenzon Rolle, Bruno Wolfenzon, David C. Dorsey and Crystal T. Innabi for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

## I.  INTRODUCTION

Plaintiff and respondent Corina Young (plaintiff) filed two civil complaints alleging various acts of mismanagement and self-dealing in the operation of a cannabis dispensary known as Southern California Organic Treatment (SCOT).  The first

1

complaint (derivative action) was filed in plaintiff's representative capacity as a shareholder of SCOT and named David Gash (Gash), Quorum Green Industries, LLC (Quorum), two additional individuals, and five additional limited liability companies as defendants.[1] The second complaint (contract action) alleged that Gash and Quorum's acts and omissions also constituted a breach of the stock purchase agreement in which plaintiff initially purchased 10 percent of the shares in SCOT.

Defendants and appellants Gash and Quorum (collectively, defendants) moved to compel arbitration of all the claims alleged in the contract action. However, the trial court concluded that the derivative action constituted a pending court action involving third parties arising out of the same set of transactions within the meaning of Code of Civil Procedure[2] section 1281.2, subdivision (c). The trial court further concluded that ordering the contract action to arbitration would create the possibility of conflicting rulings on common issues of fact or law and denied the motion to compel arbitration.

On appeal, defendants do not challenge the trial court's conclusion that the derivative action and contract action arise out of the same set of transactions or its conclusion that ordering the contract action to arbitration separately would create the possibility of conflicting rulings on common issues of fact or law. Instead, defendants argue the trial court erred by (1) finding that the derivative action constituted a "pending action" within the meaning of section 1281.2, subdivision (c); (2) finding that the two

---

[1] Other than Gash and Quorum, the other defendants named in the derivative action are not parties to this appeal.

[2] Undesignated statutory references are to the Code of Civil Procedure.

actions involved "third parties" within the meaning of section 1281.2, subdivision (c); and (3) denying arbitration as opposed to selecting one of the alternative statutory remedies under section 1281.2, subdivision (c). We disagree with each of these contentions on appeal and affirm the order.

## II. FACTS AND PROCEDURAL HISTORY

Gash is an owner and managing member of Quorum, a limited liability company. In 2019, plaintiff and Gash participated in negotiations related to the acquisition of a cannabis dispensary known as Southern California Organic Treatment (SCOT). The acquisition was ultimately accomplished through an initial transaction in which Quorum obtained 100 percent of the shares in SCOT and a subsequent stock purchase agreement (stock purchase agreement) in which plaintiff purchased 10 percent of the shares in SCOT from Quorum.

On July 16, 2020, plaintiff filed a civil complaint in her capacity as a shareholder against SCOT's directors and six limited liability companies that were separately owned and operated by the directors (derivative action). The complaint alleged that the directors misappropriated funds for their own personal benefit and the benefit of their separately owned companies. Gash was one of the directors named as a defendant, and Quorum was named as one of the limited liability companies owned by Gash.

On August 25, 2020, plaintiff filed a separate civil complaint against Gash and Quorum alleging various contract and tort claims (contract action). This suit was based upon some of the same acts or omissions alleged as the basis for liability in the

3

shareholder action, but it alleged that such acts or omissions also breached the obligation imposed by the stock purchase agreement.

On October 6, 2020, Gash and Quorum filed a motion to compel arbitration of the contract action based upon an arbitration clause in the stock purchase agreement. Plaintiff opposed the motion on multiple grounds, including the ground that section 1281.2, subdivision (c), granted the trial court authority to deny arbitration because the derivative action involved third parties and created the possibility of inconsistent rulings on common issues of fact or law.

On December 29, 2020, the trial court denied defendants' motion to compel arbitration. In its statement of decision, the trial court stated it was denying the motion solely under the provision of section 1281.2, subdivision (c), finding that both the derivative action and contract action arose out of the same set of transactions and that there was a possibility of conflicting rulings on issues of fact or law if the contract action was ordered to arbitration. The trial court further declined defendants' request to order the derivative action stayed pending arbitration of the contract action. Gash and Quorum appeal from that order.

### III.  DISCUSSION

A.  *General Legal Principles*

"A party to a contractual arbitration agreement may compel a recalcitrant party to comply with a valid agreement by means of a petition pursuant to section 1281.2, which is in essence a suit in equity to compel specific performance of the arbitration agreement." (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795.)

4

"Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony." (*Goldman v. Sunbridge Healthcare*, *LLC* (2013) 220 Cal.App.4th 1160, 1169; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413-414.)

"Under section 1281.2, subdivision (c), 'a court may stay or refuse to compel arbitration of all or part of an arbitrable controversy when: (1) "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions," and (2) "there is a possibility of conflicting rulings on a common issue of law or fact." [Citation.] . . . Section 1281.2(c) " 'addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement.' " ' " (*Valentine v. Plum Healthcare Group*, *LLC* (2019) 37 Cal.App.5th 1076, 1084.)

" ' " ' "There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." ' " ' " (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1051; see *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468.)

Here, the first two issues raised on appeal involve the trial court's interpretation of section 1281.2, subdivision (c). Specifically, the definition of the phrases "pending action" and "third party" as used in that statute. Thus, these issues are subject to our

5

independent review.  (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5 ["[T]he interpretation of a statute is a question of law to be determined by the reviewing court de novo."]; *Laswell v. AG Seal Beach*, *LLC* (2010) 189 Cal.App.4th 1399, 1406 ["[W]hether a defendant is in fact a third party for purposes of . . . section 1281.2, subdivision (c), is a matter of law subject to de novo review."].)  The remaining issue of whether the trial court selected the appropriate remedy after concluding that section 1281.2, subdivision (c), applied is reviewed for abuse of discretion.  (*Laswell*, at p. 1406 ["If the third party exception applies, the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse."].)

B.  *The Trial Court Did Not Err in Concluding the Third Party Exception Applies*

On appeal, defendants claim the trial court erred in applying section 1281.2, subdivision (c), because the derivative action is not a "pending action" within the meaning of the statute and because there are no "third parties" within the meaning of the statute.  As we explain, both of these arguments are premised upon a fundamentally incorrect assumption that the two actions involve the same plaintiff.

    1.  <u>The Derivative Action and Contract Action Involve Different Plaintiffs</u>

"[A] derivative suit is one in which the shareholder seeks 'redress of the wrong to the corporation.  [Citations.]'  [Citation.]  Thus, an action ' "is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." ' "  (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 793.)

6

Such an action is entirely separate and " ' "mutually exclusive" ' " from a cause of action held by a shareholder in his or her individual capacity. (*Ibid.*) "When the claim is derivative, the 'shareholder is merely a nominal plaintiff . . . . Even though the corporation is joined as a nominal defendant . . . , it is the real party in interest to which any recovery usually belongs.' " (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312.)

Here, the derivative action is representative by its very nature, with the corporate entity considered the real party in interest entitled to recovery. While plaintiff is named in the caption of the complaint, her status in the derivative action is merely nominal. Thus, the derivative action is, in essence, a suit involving claims asserted by SCOT, as the real party in interest, against Gash, Quorum, and the other individuals and corporate entities named in that action. In contrast, the contract action is a suit involving plaintiff's individual contract and tort claims against Gash and Quorum. The two actions represent two different plaintiffs asserting different claims arising out of the same set of transactions, with Gash and Quorum as the parties common to both actions. Once this distinction is properly understood, it is apparent that the trial court did not err with respect to its conclusion that section 1281.2, subdivision (c), applies.

2. The Derivative Action Constitutes a "Pending Action" Within the Meaning of Section 1281.2, Subdivision (c)

Defendants contend the trial court erred because the derivative action is not a "pending action" within the meaning of section 1281.2, subdivision (c). Specifically, defendants claim that the phrase "pending court action" refers only to "the action that is

7

created by the Court when it compels certain parties or certain claims to arbitration and non-arbitrable claims or parties remain in the [superior court] proceeding," and that a trial court is not "permitted to look outside of its own action to find a pending court action" for purposes of the statute. We disagree.

First, the plain words of the statute do not support defendants' interpretation. "In interpreting a statute, . . . '[o]ur first step is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.' . . . ' "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute . . . ." ' " (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) Here, nothing in section 1281.2, subdivision (c), suggests that the phrase "pending court action" refers only to the nonarbitrable claims asserted in the same complaint. If anything, the express words of the statute suggest the very opposite. Section 1281.2, subdivision (c), expressly states, in pertinent part: "For purposes of this section, a pending court action . . . includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed . . . ." These words plainly suggest that any court proceeding—even one initiated after a motion to compel arbitration has been filed—may constitute a "pending court action" within the meaning of the statute.

Second, the argument advanced by defendants is identical to that rejected in *Whaley v. Sony Computer Entertainment America*, *Inc.* (2004) 121 Cal.App.4th 479. In *Whaley*, different plaintiffs filed separate complaints against the same defendant arising out of the same set of transactions. (*Id.* at p. 482.) The trial court declined to compel

8

arbitration of the claims asserted in one of the complaints, concluding that the other complaint constituted a pending action involving a third party within the meaning of section 1281.2, subdivision (c). (*Id.* at p. 483.) The Court of Appeal affirmed the trial court's order, reasoning that (1) "[t]he statute is unambiguous"; (2) "[t]he Legislature could easily have chosen to specify that the trial court's authority to deny arbitration . . . could be exercised only if the party resisting arbitration was also a party to the related litigation with a third party [; but] it did not do so"; and (3) "we may not 'insert qualifying provisions not included in the statute.' " (*Id.* at p. 486.) Thus, *Whaley* supports the conclusion that a party resisting arbitration may rely upon a separate complaint filed by a different plaintiff in arguing that section 1281.2, subdivision (c), permits the trial court to deny a motion to compel arbitration. Defendants have not cited any authority to the contrary in support of their argument on appeal.

Here, Gash and Quorum are named defendants in two different complaints brought by legally distinct plaintiffs. Under a plain reading of the statute and the reasoning set forth in *Whaley*, a different complaint filed by a different plaintiff may qualify as a "pending action" within the meaning of section 1281.2, subdivision (c). Thus, the trial court did not err to the extent it considered the derivative action a "pending action" within the meaning of section 1281.2, subdivision (c).

3. The Derivative Action Involves Third Parties Within the Meaning of Section 1281.2, Subdivision (c)

Defendants also contend the trial court erred in concluding section 1281.2, subdivision (c), applied because there are no "third parties" within the meaning of the statute. Again, we disagree.

"For purposes of [section 1281.2, subdivision (c)], a third party is one who is neither bound by nor entitled to enforce the arbitration agreement." (*Daniels v. Sunrise Senior Living*, *Inc.* (2013) 212 Cal.App.4th 674, 679 (*Daniels*), citing *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612.)

Here, the arbitration agreement that defendants seek to enforce is found within the stock purchase agreement. On its face, the only parties to the stock purchase agreement are plaintiff and Quorum, and the only signatories are plaintiff, in her individual capacity, and Gash, who executed the agreement on behalf of Quorum. However, the derivative action involves two other individuals and five other limited liability companies that do not appear to be parties or signatories to the stock purchase agreement. Thus, the additional defendants named in the derivative action are "third parties" within the meaning of section 1281.2, subdivision (c).

Further, as we have already explained, the derivative action is a representative action brought by plaintiff on behalf of SCOT, which is the real party in interest with respect to the claims asserted in that complaint. This court has unambiguously held that the same individual is considered a different party for purposes of section 1281.2, subdivision (c), when bringing claims in both an individual and representative capacity.

10

(*Daniels*, *supra*, 212 Cal.App.4th at pp. 680-681 [The plaintiff was a third party within the meaning of section 1281.2, subdivision (c), when asserting a wrongful death claim, despite also asserting claims as the personal representative of decedent's estate that were subject to an arbitration agreement.].) The stock purchase agreement also bears no indication that SCOT is a party to the agreement. Thus, plaintiff, asserting claims in a representative capacity on behalf of SCOT in the derivative action, was also a third party within the meaning of section 1281.2, subdivision (c).

Because the derivative action involves a plaintiff (SCOT) and numerous defendants that are not parties to the stock purchase agreement containing the arbitration provision defendants seek to enforce, we find no error in the trial court's conclusion that there were third parties within the meaning of section 1281.2, subdivision (c).

4. <u>Defendants Have Forfeited Their Argument Based Upon Equitable Estoppel</u>

On appeal, defendants assert for the first time that the doctrine of equitable estoppel should apply to bar plaintiff from resisting enforcement of the arbitration agreement. We deem this argument forfeited for failure to raise the issue below. Nor do we believe the record is sufficient to permit this court to exercise its discretion to consider the issue for the first time on appeal.

"If a party fails to raise an issue or theory in the trial court, we may deem consideration of that issue or theory forfeited on appeal." (*Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322.) This principle has been specifically applied to claims of error with respect to a trial court's order on a motion to compel arbitration. (*Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 9 [argument

11

that party seeking to enforce arbitration was not a signatory to agreement was forfeited for failure to raise issue in trial court]; *Swain v. LaserAway Medical Group*, *Inc.* (2020) 57 Cal.App.5th 59, 76 [argument that arbitration agreement was not unconscionable based upon statutory exception was forfeited for failure to raise issue in trial court].)

Here, the theory that plaintiff should be estopped from resisting enforcement of the arbitration agreement based upon principles of equitable estoppel was never raised in the trial court proceedings. Defendants made no mention of the doctrine of equitable estoppel in their briefs before the trial court; made no mention of that theory at the time of oral argument; and made no request for a ruling on that theory when objecting to the proposed statement of decision. Thus, defendants have clearly forfeited that argument.

Defendants openly concede that they failed to raise the issue of equitable estoppel in the trial court but contend that "it is of no consequence" on appeal because this court has discretion to consider the issue. However, " '[m]erely because an issue is one of law, does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion.' " (*Meridian Financial Services*, *Inc. v. Phan* (2021) 67 Cal.App.5th 657, 699-700.) Generally, this discretion is exercised only where it involves a legal question determinable from facts that are uncontroverted in the record and could not have been altered by the presentation of additional evidence. (*Ibid.*; *American Indian Health & Services Corp. v. Kent* (2018) 24 Cal.App.5th 772, 789.) As we explain, the question of whether equitable estoppel can be applied to preclude application of section 1281.2, subdivision (c), in this case cannot be resolved based upon the record before us.

The doctrine of equitable estoppel is an "exception" to the general rule that " 'one must be a party to an arbitration agreement to be bound by it or invoke it.' " (*JSM Tuscany*, *LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1236 (*JSM Tuscany*).) Thus, the doctrine is a means to determine whether a nonsignatory should be considered bound by or entitled to invoke the arbitration agreement. (*Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409, 1417 [equitable estoppel may apply to permit a nonsignatory to enforce an arbitration agreement ]; *JSM Tuscany*, at pp. 1239-1240 [equitable estoppel may apply to permit enforcement of arbitration agreement against nonsignatory].) When the doctrine is found to apply, the nonsignatory ceases to be a "third party" for purposes of section 1281.2, subdivision (c), because the nonsignatory is considered a party to the arbitration agreement. (*Molecular Analytical Systems v. Ciphergen Biosystems*, *Inc.* (2010) 186 Cal.App.4th 696, 714 ["[W]here the equitable estoppel doctrine applies, the nonsignatory has a right to enforce the arbitration agreement" and "is not a 'third party' within the meaning of section 1281.2 [, subdivision (c)]."].)

However, in this case, numerous third parties are not signatories to the arbitration agreement defendants seek to enforce—including SCOT (the real party in interest in the derivative action), as well as at least seven other named defendants in the derivative action. Unless all of these nonsignatories could be considered bound by or entitled to enforce the arbitration agreement under principles of equitable estoppel, thereby losing their status as a third party, any one remaining third party could trigger the application of

13

section 1281.2, subdivision (c).[3]  (See *JSM Tuscany*, *supra*, 193 Cal.App.4th at p. 1244, fn. 25 [recognizing that while some nonsignatories may be required to arbitrate their claims, the presence of other parties who are "not similarly situated" may still render the action subject to section 1281.2, subdivision (c)].)

Here, the record is devoid of any evidence from which this court could determine that SCOT or the additional defendants in the derivative action should be considered bound by or entitled to enforce the arbitration agreement under the doctrine of equitable estoppel.[4]  Simply put, the issue was never briefed, no evidence was presented with respect to the involvement of any of these parties, and these parties are not parties to this appeal.  Thus, the record is simply inadequate for this court to determine whether equitable estoppel precludes the application of section 1281.2, subdivision (c), in this case.[5]  Even if an issue involves only a legal question, where the record is insufficient to

---

[3]  We observe, however, that the number of parties deemed subject to the arbitration agreement in relation to the number of third parties may be relevant to the selection of the appropriate remedy under section 1281.2, subdivision (d).

[4]  On appeal, defendants assert that the nonsignatory defendants named in the derivative action "have the right to invoke the arbitration provision and are therefore not third parties," but provide no authority and no analysis in support of this bare assertion. As we have already explained, plaintiff's status in the derivative action is nominal in nature and SCOT is the real party in interest.  The doctrine of equitable estoppel would not permit nonsignatory defendants to enforce an arbitration agreement against a nonsignatory plaintiff.  Further, with the exception of Gash and Quorum, plaintiff has asserted no individual claims against the defendants named in the derivative action. Thus, there does not appear to be any occasion for these defendants to seek enforcement of the arbitration agreement against plaintiff as an individual.

[5]  Gash and Quorum have requested this court take judicial notice of an order issued by the trial court during the pendency of their appeal, granting a motion to compel

*[footnote continued on next page]*

resolve that question, a reviewing court will not exercise its discretion to consider it for the first time on appeal.

*C.  Defendants Have Not Established an Abuse of Discretion With Respect To the Trial Court's Selection of a Remedy Under Section 1281.2, Subdivision (c)*

The final issue raised in defendants' appeal involves the trial court's decision to deny arbitration upon concluding that section 1281.2, subdivision (c), applied. Specifically, defendants argue the trial court abused its discretion by (1) denying arbitration without simultaneously ordering consolidation of the derivative action and contract action, and (2) refusing to stay the derivative action pending the outcome of arbitration in the contract action.  We disagree.

"When [section 1281.2, subdivision (c)] applies, section 1281.2 'identifies four options from which the trial court may choose, including denial or stay of arbitration proceedings' [citation], but also a stay of court proceedings and order to arbitrate . . . . 'These options are entrusted to the trial court's discretion.' "  (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 951.)  The trial court's selection of one

_____

arbitration filed in the derivative action.  However, the only document submitted with that request is a minute order stating that a motion to compel arbitration was granted. None of the papers filed in the trial court or the trial court's statement of decision were part of defendants' request for judicial notice.  Thus, this court has no indication of whether the motion was premised upon consideration of the same written agreement to arbitrate, whether additional evidence was submitted in support of that motion, whether the order involved only certain claims, or whether the order involved only certain parties to the derivative action.  Nor have defendants argued that this subsequent order renders their appeal moot.  Thus, we are unable to determine the relevance of the document to the issues presented in this appeal, and we deny the request.

of the statutorily authorized options will be disturbed only if it "exceed[s] the bounds of reason." (*Daniels*, *supra*, 212 Cal.App.4th at p. 686.)

On appeal, defendants do not contest the trial court's finding that if tried separately, the derivative action and contract action have the potential to produce inconsistent rulings on common issues of fact or law. Generally, " '[t]he existence of [the] possibility of conflicting rulings on a common issue of fact is sufficient grounds . . .' to deny a motion to compel pursuant to section 1281.2, subdivision (c)." (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1499.) Thus, by failing to contest the trial court's finding in this regard, defendants have not met their burden to show the trial court exceeded the bounds of reason in denying arbitration.

Contrary to defendants' argument, the statute does not mandate that the trial court order consolidation or joinder of two actions when denying arbitration. On its face, the statute provides that if 1281.2, subdivision (c), applies, the trial court "*may* refuse to enforce the arbitration agreement and *may* order intervention or joinder of all parties in a single action or special proceeding." (§ 1281.2, subd. (d), italics added.) "Ordinarily, the word 'may' connotes a discretionary or permissive act." (*Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433.) Under a plain reading of the statute, the trial court is not required to order intervention or joinder, as that provision is clearly proceeded by the word "may," indicating that such action is discretionary.[6]

---

[6] We also note even if the trial court were to order consolidation, it has the discretion to consolidate two cases for all purposes or for trial only. (§ 1048.) Thus, even if consolidation were required to avoid the potential for inconsistent findings on

*[footnote continued on next page]*

Finally, defendants' argument that the trial court could have eliminated the possibility of inconsistent rulings by ordering the contract action to arbitration while staying the derivative action is not grounds for reversal on appeal. With respect to the trial court's selection of a remedy under section 1281.2, the fact that another option might have been more reasonable under the circumstances does not show an abuse of discretion. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 351 ["The reasonableness of an approach that was not selected does not entail the unreasonableness of the one that was."].) Thus, even assuming defendants are correct that another option available under section 1281.2 could, hypothetically, eliminate all possibility of inconsistent rulings on commons issues of fact or law, such a showing does not establish an abuse of discretion warranting reversal on appeal.

---

common issues of fact or law, it would be more than reasonable for the trial court first to deny arbitration and then to wait until an appropriate future proceeding involving all parties to both actions before deciding the extent to which the two actions should be consolidated.

## IV.  DISPOSITION

The order is affirmed.  Appellants to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS _____
J.

We concur:


RAMIREZ _____
P. J.


SLOUGH _____
J.