Filed 6/20/23  Sajjadi v. The Rehabilitation Centre of Beverly Hills CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NIMA SAJJADI et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> THE REHABILITATION CENTRE OF BEVERLY HILLS, <br><br> Defendant and Appellant. | B317554 <br><br> Los Angeles County Super. Ct. No. 21STCV24399 |

APPEAL from an order of the Superior Court of Los Angeles County, Audra M. Mori, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Daniel R. Velladao, and Kathleen M. Walker for Defendant and Appellant.

Gaw | Poe, Randolph Gaw, Mark Poe, and Victor Meng for Plaintiffs and Respondents.

# INTRODUCTION

Defendant and appellant The Rehabilitation Centre of Beverly Hills (RCBH), appeals from an order denying its petition to compel arbitration as to the wrongful death claim brought by plaintiffs and respondents Nima Sajjadi, Sima Nobahar, and the Estate of Mahmood Sajjadi (plaintiffs). The trial court ruled that the wrongful death claim was not subject to arbitration because it is primarily based on allegations of elder abuse and thus Code of Civil Procedure[1] section 1295 does not apply to bind plaintiffs to the arbitration agreement signed by the decedent, Mahmood Sajjadi.[2] We agree and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Mahmood is the father of Nima and husband of Nobahar. In March of 2020, Mahmood sustained an injury to his toe that became infected. Although he was treated with antibiotics, his foot became gangrenous and was ultimately amputated at the Cedars-Sinai Medical Center (Cedars-Sinai). Shortly thereafter, Mahmood signed an advanced healthcare directive appointing Nima as his healthcare agent.

In August of 2020, Mahmood was admitted to RCBH, a rehabilitation and skilled nursing center. The admissions paperwork included an arbitration agreement, which Mahmood and a representative of RCBH both signed. The agreement stated that an arbitrator would resolve any medical malpractice

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

[2] Because Nima and Mahmood share the same last name, we refer to them by their first names. No disrespect is intended.

disputes. It also stated that any dispute between Mahmood and RCBH or any of its employees relating to the provision of care, treatment or services to Mahmood at RCBH, including any action for injury or death arising from negligence, intentional tort and/or statutory causes of action would be determined by arbitration. The agreement further provided that it is binding on all parties, including representatives, executors, family members, and heirs who bring any claims individually or in a representative capacity. On the signature page, there was a statement pursuant to section 1295, subdivision (b), that provided: "NOTICE: By signing this contract you are agreeing to have any issue of medical malpractice decided by neutral arbitration and you are giving up your right to a jury or court trial." (All caps removed.)

In September 2020, Mahmood was transferred to Cedars-Sinai, where doctors diagnosed him with "acute renal failure likely due to dehydration." Mahmood later developed a Methicillin-resistant Staphylococcus aureus (MRSA) infection. He was transferred again to Cedars-Sinai on September 23 and October 18, and ultimately died of sepsis in December 2020.

In June 2021, the plaintiffs filed a lawsuit against RCBH, asserting a wrongful death claim in Nima and Nobahar's personal capacity and a negligence survivor claim on behalf of the Estate. RCBH moved to compel arbitration based on the agreement signed by Mahmood.

Shortly thereafter, the plaintiffs filed an amended complaint, which asserted a new survivor claim for elder abuse in addition to the wrongful death and negligence survivor claims. The amended complaint alleged that Mahmood either acquired the MRSA infection at RCBH or the infection was exacerbated

3

there due to RCBH's negligent care, that the MRSA infection or remnants of the gangrene infection developed into sepsis, and that, because of the deterioration of his condition due to RCBH's inadequate care, the sepsis proved fatal. It further alleged that Mahmood's hospitalization for dehydration shortly after he was admitted "can only be explained by the negligence of RCBH employees, as [keeping a patient properly hydrated] was a shockingly basic task that they did not accomplish." "Another sign of RCBH's negligence was that Mahmood's family was always told that Mahmood was sleeping, despite the fact that his family deliberately called at various times of the day over many days," which suggested that RCBH's staff "likely just did not bother to check at all." The amended complaint also alleged that "RCBH employees failed to provide appropriate medical care on Mahmood (given that they could not even keep him hydrated), which caused him to contract MRSA or exacerbate an existing infection during his stay at their facility."

With respect to the wrongful death and survivor negligence causes of action, the amended complaint alleged that "RCBH breached its duty of care because it provided inadequate care to Mahmood during his stay at its facility, which caused him to develop acute renal failure and also to acquire a MRSA infection (or exacerbate an existing infection)." With respect to the elder abuse cause of action, it alleged that "RCBH's staff neglected Mahmood's physical care with reckless indifference by failing to prevent his dehydration" and that its negligence was reckless because "[t]here is no justification why RCBH employees could not prevent its patients from experiencing severe dehydration after less than a month's stay." The plaintiffs further alleged that Nima and Nobahar's inability to get in contact with Mahmood at

4

RCBH, despite calling "at all hours of the day and night," indicated that "RCBH's employees simply did not care and did not bother to check on Mahmood" and that "there was systemic indifference at RCBH towards Mahmood that was authorized or ratified by its executives (or at least, took place with their knowledge)."

The plaintiffs also opposed the motion to compel arbitration. They contended that RCBH had failed to present evidence that the arbitration agreement was subject to section 1295, which operates to bind a patient's agreement to arbitrate on his heirs with respect to a wrongful death claim, because it not shown that it was a "health care provider" as defined by the statute. They also argued that they had not signed the arbitration agreement and that their elder abuse claim and wrongful death claim sounding in elder abuse fall outside the scope of section 1295, which only pertains to claims for professional negligence.

The trial court held that the wrongful death claim was not subject to arbitration because it sounded in elder abuse and thus did not fall within the ambit of section 1295. The court granted RCBH's petition to compel arbitration as to the survivor claims and ordered the wrongful death claim stayed.

## CONTENTIONS

RCBH argues that the court erred in denying the motion to compel with respect to the wrongful death claim because the arbitration agreement complied with section 1295, RCBH is a licensed health care provider, and the wrongful death claim arose from its alleged professional negligence. The plaintiffs argue that the court correctly concluded that section 1295 does not apply to

their wrongful death claim because it is primarily based on allegations of elder abuse.[3]

## DISCUSSION

### 1. The court did not err in holding that the plaintiffs' wrongful death claim was not subject to arbitration.

#### 1.1. Standard of Review

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.]" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) The issue of whether a third party is bound by an arbitration agreement is a question of law. (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680 (*Daniels*).)

#### 1.2. Section 1295 and its Application to Nonsignatories of an Arbitration Agreement

Section 1295 governs agreements to arbitrate professional negligence claims in medical services contracts with health care providers.[4] In *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 841 (*Ruiz*),

---

[3] On appeal, the plaintiffs do not dispute that the arbitration agreement satisfies the requirements of section 1295 or that RCBH is a "health care provider" under section 1295.

[4] Section 1295 defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are

the Supreme Court held "that all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295, at least when . . . the language of the agreement manifests an intent to bind these claimants." " 'Section 1295 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). . . . The purpose of section 1295 is to encourage and facilitate arbitration of medical malpractice disputes,' " because the arbitration of these disputes "furthers MICRA's goal of reducing costs in the resolution of malpractice claims and therefore malpractice insurance premiums." (*Id.* at pp. 843–844.) The Supreme Court was "persuaded that section 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions." (*Id.* at pp. 849–850.)

In *Daniels*, the plaintiff alleged that the decedent, who was elderly and suffered from " 'dementia with psychosis,' " died as a result of receiving inadequate care at the defendant's residential care facility for the elderly. (*Daniels*, *supra*, 212 Cal.App.4th at p. 677.) In her capacity as the decedent's successor in interest, the plaintiff alleged claims for elder abuse, negligence, breach of contract, and willful misconduct. (*Id.* at pp. 677–678.) The plaintiff also alleged a wrongful death cause of action in her personal capacity as the decedent's heir. (*Id.* at p. 678.)

Upon the decedent's admission to the facility, the plaintiff, who had power of attorney for the decedent, had signed a residency agreement containing an arbitration provision covering

---

within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 1295, subd. (g)(2).)

" 'any and all claims and disputes arising from or related to this Agreement or to your residency, care or services' " received at the facility, and which bound " 'all parties to this Agreement and their spouse, heirs, representatives, executors, administrators, successors, and assigns, as applicable. . . .' " (*Daniels*, *supra*, 212 Cal.App.4th at p. 678.) The defendants therefore moved to compel arbitration. (*Ibid.*) The trial court denied the motion, concluding that the wrongful death claim was not arbitrable because the plaintiff did not sign the residency agreement in her personal capacity and was therefore a third party to the agreement. (*Id.* at p. 679.)

The Court of Appeal agreed. It observed that a plaintiff's "wrongful death claim is personal to her and lies independent of . . . survivor claims," and that "[a]s a general rule, a party cannot be compelled to arbitrate a dispute that he or she has not agreed to resolve by arbitration." (*Daniels*, *supra*, 212 Cal.App.4th at p. 680.) The court explained that "*Ruiz* is based squarely on section 1295, which governs agreements to arbitrate professional negligence or medical malpractice claims" and "disagree[d] that *Ruiz* should be extended to arbitration agreements not governed by section 1295, or that are entered into with a person other than a health care provider for claims other than medical malpractice." (*Id.* at pp. 682–683.) The court rejected the defendants' contention that a residential care facility was " 'an extension of a health care facility' " and thus subject to section 1295. (*Id.* at pp. 683–684.)

In *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835 (*Avila*), the decedent, an 87-year-old man, was admitted to an acute care hospital, where a feeding tube allegedly became dislodged and caused the man to aspirate. (*Id.*

at p. 838.) The decedent's son had previously signed an arbitration agreement on the decedent's behalf that included the necessary language from section 1295. (*Avila,* at p. 838.) The decedent's son sued for " 'negligence/willful misconduct,' " elder abuse, and wrongful death. (*Id*. at p. 839.) The *Avila* court recognized that *Ruiz* created "an exception to the general rule that arbitration agreements must be the subject of consent rather than compulsion." (*Id*. at p. 841.) Thus, the central question was "whether *Ruiz* is controlling here," which required that the court "determine whether this case is about 'professional negligence,' as defined by MICRA, or something else." (*Id*. at p. 842.)

The court rejected the defendants' contention that "*Daniels* is irrelevant because the defendant in that case was not a licensed health care provider" and concluded that "[w]hat matters is not the license status of the defendant, but the basis of the claims as pleaded in the complaint. If the primary basis for the wrongful death claim sounds in professional negligence . . . then section 1295 applies. If . . . the primary basis is under the Elder Abuse and Dependent Adult Civil Protection Act [(the Elder Abuse Act)] [citations] . . . , then section 1295 does not apply and neither does *Ruiz*'s exception to the general rule that one who has not consented cannot be compelled to arbitrate." (*Avila, supra*, 20 Cal.App.5th at p. 842.) The court noted that "[t]he complaint includes allegations that could be categorized as professional negligence as well as elder abuse" and that "[t]here is at least some overlap between the two." (*Id*. at p. 843.) However, "the complaint was pleaded as one for 'negligence/willful misconduct,' elder abuse and neglect under the [Elder Abuse] Act, and wrongful death. The complaint allege[d] a 'conscious and continued pattern of withholding the most basic care and

9

services,' which included a lack of monitoring, supervision, assistance, and other adequate care and services." (*Ibid.*) "Under the [Elder Abuse] Act, neglect ' "refers not to the substandard performance of medical services but, rather, to the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.' [Citation.] Thus, the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." ' [Citation.]" (*Ibid.*; see also Welf. & Inst. Code, § 15610.57.) Because the plaintiffs "chose to plead a cause of action under the [Elder Abuse] Act, and they did so successfully[,] [t]he fact that they could have also pleaded a claim for medical malpractice, had they wished to do so, is irrelevant." (*Avila*, at p. 843.)

### 1.3. Analysis

Although the arbitration agreement at issue here provides that any dispute between Mahmood and RCBH will be determined by submission to arbitration and is binding on "all parties," including "representatives . . . and heirs who bring any claims individually or in a representative capacity", the agreement was signed only by Mahmood, not by Nima or Nobahar. "Generally speaking, one must be a party to an arbitration agreement to be bound by it. 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]' [Citation.]" (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142.)

10

As discussed, section 1295 supplies an exception to this general rule and permits patients who consented to arbitration to bind their heirs in actions for wrongful death where the action is based on professional negligence. As in *Avila*, the question before us is "whether *Ruiz* is controlling here." (*Avila*, *supra*, 20 Cal.App.5th at p. 842.) Thus, we must "determine whether this case is about 'professional negligence,' as defined by MICRA, or something else." (*Ibid.*)

RCBH argues that the wrongful death claim sounds in professional negligence because "the basis for the wrongful death cause of action was RCBH's alleged failure to provide appropriate medical care for Mahmood's infection." While there is "at least some overlap between" professional negligence and elder abuse (*Avila*, *supra*, 20 Cal.App.5th at p. 843), the plaintiffs here pleaded their action as one for wrongful death, negligence, and elder abuse. They alleged that there was a failure by RCBH's employees to attend to Mahmood's basic needs, including hydration, which resulted in his hospitalizations, and a failure to check on him, as reflected by their failure to put Nima and Nobahar in touch with Mahmood when they frequently called. As in *Avila*, these allegations are consistent with a claim for neglect under the Elder Abuse Act, which " ' "speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." ' [Citation.]" (*Ibid.*)

RCBH does not address or distinguish *Avila* or *Daniels* but relies on several cases that did not concern arbitrability or section 1295 to support the proposition that the allegations of the amended complaint are consistent with professional negligence

11

and do not plead a claim for elder abuse.[5] We are not persuaded. First, as the plaintiffs point out, the issue here is not whether they have successfully pleaded a claim for elder abuse, but whether their wrongful death cause of action is based on something other than professional negligence. Thus, to the extent that RCBH relies on the cases to support that the plaintiffs have not adequately pleaded recklessness for purposes of stating a claim for elder abuse, we do not find them instructive, as that is not the question before us.[6]

Moreover, the cases RCBH cites addressing neglect under the Elder Abuse Act are distinguishable. In *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 406–407 (*Carter*), the court observed that, to state a claim for elder abuse, a "plaintiff must allege . . . facts establishing that

---

[5] RCBH also did not address *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256 in its briefing below or on appeal, nor was that case raised by plaintiffs or the court. The dissent nevertheless contends that *Quiroz* does not allow Mahmood's heirs to sue on their own behalf for wrongful death based on allegations of elder abuse. The pivotal issue in that case, however, was whether the filing of the survivor action related back to the filing of the wrongful death claim in the original complaint, thereby avoiding the bar of the statute of limitations. (*Id.* at pp. 1262, 1278.) The *Quiroz* court observed that the relation-back doctrine required that the amended complaint must involve the same injury, and a new plaintiff could not be joined after the limitations period has run if he or she seeks to enforce an independent right or greater liability. (*Id.* at p. 1278.)

[6] *Cochrum v. Costa Victoria Healthcare, LLC* (2018) 25 Cal.App.5th 1034 does not assist RCBH for this reason. The court in *Cochrum* affirmed a judgment notwithstanding the verdict on the basis that the plaintiff had not identified substantial evidence of recklessness by the defendants. (*Id.* at pp. 1044–1050.)

12

the defendant: (1) had responsibility for meeting the basic needs of the elder or dependent adult, such as nutrition, hydration, hygiene or medical care [citations]; (2) knew of conditions that made the elder or dependent adult unable to provide for his or her own basic needs [citations]; and (3) denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs . . . ." The court concluded that the demurrer of the elder abuse cause of action had been properly sustained where the plaintiff had failed to allege that the defendant had denied or withheld care or treatment from the decedent in connection with the decedent's first two hospitalizations and had alleged that the defendant's "staff actively undertook to provide treatment intended to save [the decedent's] life" with respect to the third hospitalization. (*Id.* at pp. 407–408.)

In *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 212 (*Alexander*), the decedent, a 70-year-old woman suffering from end-stage terminal pancreatic cancer, died days after she was transferred from a skilled nursing facility to the defendant hospital. The complaint alleged that the "[d]efendants administered drugs to [the decedent] to hasten her death and withheld nutrition, hydration, and pain medication," but was also "replete with allegations that [the decedent] regularly received pain medication, nutrition, and fluids" and that defendants "provided [the decedent] with medical care throughout her hospitalization." (*Id.* at p. 224.) The Court of Appeal thus concluded that the plaintiffs' complaint was insufficient to state a cause of action for elder abuse within the meaning of the Elder Abuse Act because "[u]nlike cases in which elder abuse is properly pleaded because the patient was abandoned or ignored for extended periods of time, here family

13

members disagreed with the nature of care their mother was receiving. Disagreements between physicians and the patient or surrogate about the type of care being provided does not give rise to an elder abuse cause of action." (*Id.* at p. 223.)

Here, the amended complaint alleges that RCBH failed to take appropriate action with respect to Mahmood, not that the plaintiffs disagreed with RCBH's rendering of professional services. The amended complaint is not "replete" with references to the medical care that RCBH provided to Mahmood (*Alexander*, *supra*, 23 Cal.App.5th at p. 223), nor are there allegations that RHBC "actively undertook to provide treatment." (*Carter*, *supra*, 198 Cal.App.4th at p. 408.) RCBH fails to identify any allegations describing the medical care it provided; it merely asserts that the allegation that RCBH "failed to provide appropriate medical care" suggests that it was providing medical care. Consistent with the definition of "neglect" under the Elder Abuse Act, and in contrast to the definition of "professional negligence" under section 1295, the gravamen of the amended complaint is that Mahmood "was abandoned or ignored for extended periods of time." (*Alexander*, at p. 223.)[7]

---

[7] We are not persuaded by RCBH's contention that the plaintiffs admitted in the amended complaint that Mahmood's wrongful death from sepsis did not result from the alleged negligence of RCBH, but the professional negligence of the doctors who treated his toe injury. As a preliminary matter, this contention was raised for the first time in its reply brief and was therefore forfeited. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc*. (2010) 188 Cal.App.4th 401, 427–428.) Even if it were not, the complaint alleges that Mahmood either acquired the MRSA infection at RCBH or it was exacerbated there; that "[e]ither that MRSA infection, or the remnants of his gangrene infection, developed into sepsis"; and "[t]hat sepsis, along with the deterioration of his physical condition from RCBH's inadequate care, proved fatal to

14

Thus, we hold that the arbitration agreement is not controlled by section 1295 and does not bind the plaintiffs as to their wrongful death claim.

---

poor Mahmood." The amended complaint plainly alleges that RCBH's negligence was a "substantial factor" in contributing to Mahmood's death and thus was sufficient to support a wrongful death cause of action against RCBH. (See *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1497.)

## DISPOSITION

The order denying the motion to compel arbitration in part is affirmed. The plaintiffs shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, Acting P.J.

I CONCUR:


BENKE, J.*

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

**EGERTON, J., Dissenting.**

I respectfully disagree with the majority's analysis in this case. In my view, the case is governed by our Supreme Court's decision in *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*) and Code of Civil Procedure section 1295.[1] The law does not permit Mahmood Sajjadi's heirs to sue on their own behalf for the elder abuse of Mahmood; only the estate can bring that claim. Accordingly, the heirs cannot pursue a wrongful death cause of action that is "based on" or "sounds in" elder abuse. Once the heirs' elder abuse theory is eliminated from their wrongful death cause of action, the only remaining conduct alleged is negligence. The heirs do not allege defendant and appellant the Rehabilitation Centre of Beverly Hills (RCBH) battered Mahmood or committed any other intentional tort against him. Accordingly, under *Ruiz* and section 1295, their wrongful death claim must go to arbitration along with the estate's survivor claims for negligence and elder abuse.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The complaints*

The heirs of Mahmood Sajjadi, on behalf of themselves and of his estate,[2] have tried everything they can think of to defeat the arbitration of this case. Their original complaint, filed

---

[1]    References to statutes are to the Code of Civil Procedure unless otherwise noted.

[2]    Because the estate and the heirs—Mahmood Sajjadi's widow and his adult son—are differently situated in terms of their authority to assert various causes of action, I refer to them as the estate and the heirs rather than as "plaintiffs" collectively.

June 30, 2021, alleged Mahmood's death was "caused by the negligent conduct of [RCBH] in mishandling his postoperative care" as well as by the "negligent misconduct" of two physicians not affiliated with RCBH. The complaint then referred to "Defendants' gross negligence."

Under "Factual Background," the heirs alleged RCBH "[f]ail[ed] to keep [Mahmood] properly hydrated" and its "employees" were negligent in "apparently . . . not accomplish[ing]" this "shockingly basic task." They also alleged that "[a]nother potential sign of RCBH's negligence" was that his family called repeatedly, "only to be told by RCBH that Mahmood was sleeping." The heirs alleged, "It is simply implausible that . . . Mahmood would always be asleep. Rather, RCBH employees likely just did not bother to check at all, and this lackadaisical attitude was indicative of their overall efforts to monitor him." In addition, the heirs alleged "[o]n information and belief, RCBH employees failed to perform adequate wound care on Mahmood."

Based on these allegations, the heirs alleged causes of action for wrongful death (first claim for relief) and negligence (second claim for relief). In the wrongful death claim, the heirs alleged each defendant owed Mahmood a duty of care, which they breached. "RCBH breached its duty of care," the complaint alleged, "because it provided inadequate care to Mahmood during his stay at its facility," causing him to acquire a staphylococcus infection. The negligence claim, alleged as a "survival action," repeated the identical allegation as to RCBH.

After RCBH filed a petition to compel arbitration, the heirs filed an amended complaint on August 20, 2021. The heirs again alleged RCBH was "negligent" "in mishandling [Mahmood's] postoperative care." The amended complaint added allegations

2

that RCBH's "negligent care" resulted in repeated hospital readmissions "for acute renal failure (due to dehydration)," and that Mahmood's infection "either [was] acquired" at RCBH "or exacerbated" there. The sepsis that resulted in Mahmood's death, the heirs alleged, resulted "[e]ither" from the staph infection "or the remnants of his gangrene infection." The amended complaint alleged "[t]hat sepsis, along with the deterioration of his physical condition from RCBH's inadequate care, proved fatal." The heirs alleged Mahmood lost his life "due to Defendants' negligence."

The heirs deleted their reference to "wound care" and instead alleged RCBH's employees "failed to provide appropriate medical care" to Mahmood, "given that they could not even keep him hydrated." The amended complaint alleged three causes of action: wrongful death (first claim for relief) "(By All Plaintiffs against All Defendants)"[3]; a "survival action" for "negligence" (second claim for relief); and a "survival action" for "elder abuse" (third claim for relief).

In the elder abuse claim, the heirs added a paragraph about Mahmood's alleged signing of the arbitration agreement ("If Mahmood did, in fact, sign this agreement . . ."), stating "RCBH's reckless and/or fraudulent behavior manifested itself immediately" when it asked Mahmood to sign an arbitration agreement. The heirs alleged "RCBH's staff neglected Mahmood's physical care with reckless indifference by failing to prevent his dehydration." The heirs continued, "But it is equally possible that RCBH's employees were simply indifferent

---

[3]     At oral argument, plaintiffs' counsel conceded he was alleging this claim on behalf of the heirs only, and not the estate.

3

to the charge of their patients." The amended complaint alleged RCBH's "staggering level of incompetence" "contributed toward[ ] their reckless neglect towards Mahmood" and "may also have been a contributing factor toward[ ] his eventual death." The heirs prayed for general, special, and punitive damages as well as attorney fees.

**2.      *Proceedings in the trial court on RCBH's petition to compel arbitration***

The heirs—again on behalf of themselves and the estate—filed an opposition to RCBH's petition to compel arbitration. The heirs raised a number of contentions. They argued the agreement was "rescindable and unenforceable" because Mahmood was "disoriented and delusional" and therefore lacked capacity to enter into the agreement. They noted they—the heirs—had not signed the agreement. They asserted RCBH was not a " 'health care provider' " within the meaning of section 1295 and so *Ruiz, supra,* 50 Cal.4th 838, did not apply to this case.

Citing *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835 (*Avila*) and *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674 (*Daniels*), the heirs argued "claims for elder abuse are outside the scope of section 1295, and thus Mahmood's agreement to arbitrate does not bind Plaintiffs [*sic*] with respect to that claim." The heirs said "because an elder abuse claim is not subject to section 1295, section 1281.2(c)'s carve out for medical malpractice claims is not applicable to elder abuse claims." Treating the estate's survivor claim for elder abuse and the heirs' wrongful death claim as interchangeable, they continued, "Accordingly, even if Mahmood's agreement to arbitrate were somehow binding on Plaintiffs [*sic*]

4

with respect to their elder abuse claim [*sic*][4] (or the aspects of the wrongful death claim that are related to that elder abuse claim), the Court could and should nevertheless decline to order them to arbitrate those claims against RCBH because of the risk of inconsistent factual rulings on the same issues between an arbitration and this action."

In its reply, RCBH argued the heirs hadn't shown Mahmood lacked the mental capacity to enter into the arbitration agreement, the agreement was not unconscionable, and RCBH was a healthcare provider. RCBH stated the court had no discretion to invoke section 1281.2, subdivision (c) (section 1281.2(c)) because the Federal Arbitration Act (FAA) governed the agreement. Citing *Ruiz* and section 1295, RCBH asserted the heirs' wrongful death claim indeed was subject to arbitration. RCBH argued *Avila* was distinguishable because there was no claim for negligence in that case,[5] while here the estate had alleged a survivor claim for negligence.

The court heard argument on the petition on September 28, 2021.[6] On October 8, 2021, the court issued a written opinion.

---

[4] As discussed below, only Mahmood (or his estate) can assert an elder abuse claim. The heirs have no claim, in their own right, under the Elder Abuse Act. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282 (*Quiroz*).)

[5] RCBH was mistaken. In *Avila*, the plaintiffs alleged a cause of action for " 'negligence/willful misconduct.' " (*Avila, supra*, 20 Cal.App.5th at pp. 837, 839.)

[6] At the hearing, the heirs' counsel argued (among other things) that "elder abuse claims are not subject to MICRA." It is unclear what counsel meant by this. Recoverable damages under

5

The court found there was a "valid enforceable arbitration agreement between RCBH and [Mahmood]." The agreement was not unconscionable. RCBH and Mahmood agreed the FAA would govern their agreement and therefore the court could not "look to [Code of Civil Procedure] § 128[1].2(c) to deny the motion to arbitrate."

The court therefore granted the petition as to the survivor claims for negligence and elder abuse. As for the heirs' wrongful death claim, however, relying on *Avila,* the court denied the petition. The court stated, "Because the wrongful death claim sounds in elder abuse, section 1295 does not apply."

## DISCUSSION

### 1. *The wrongful death tort and the Elder Abuse Act*

At common law, personal tort claims expired when the victim died. Today, a cause of action for wrongful death exists only by virtue of legislative grace. The statutorily created wrongful death cause of action (§§ 377.60-377.62) does not effect a survival of the decedent's cause of action. Instead, it gives the decedent's heirs a totally new right of action, on different principles. (*Quiroz, supra,* 140 Cal.App.4th at p. 1263; *Adams v. Superior Court* (2011) 196 Cal.App.4th 71, 76 (*Adams*); *Armijo v. Miles* (2005) 127 Cal.App.4th 1405, 1424; 6 Witkin, Summary of Cal. Law (11th ed. 2023) Torts, §§ 1537-1538.) The elements of a wrongful death cause of action are " 'the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by the *heirs.*' " (*Quiroz*, at p. 1263,

---

the Elder Abuse Act cannot exceed those allowed under Civil Code section 3333.2, subdivision (b). (See Welf. & Inst. Code, § 15657, subd. (b).)

6

quoting 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 891, p. 350. See § 377.60 [wrongful death action may be maintained "for the death of a person caused by the wrongful act or neglect of another"]; 6 Witkin, *supra*, Torts, § 1541 ["Hence, recovery is authorized when death results from either a negligent or an intentional wrongful act."].)

"Unlike a cause of action for wrongful death, a survivor cause of action is not a new cause of action that vests in the heirs on the death of the decedent. It is instead a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event." (*Quiroz*, *supra*, 140 Cal.App.4th at p. 1264; *Adams*, *supra*, 196 Cal.App.4th at pp. 78-79; *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 864.) The heirs can recover damages for "the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement." (§ 377.34, subd. (a).)

One exception, however, to the rule that damages for the decedent's predeath pain and suffering are not recoverable in a survivor action is contained in the Elder Abuse and Dependent Adult Civil Protection Act, Welf. & Inst. Code, § 15600 et seq. (the Elder Abuse Act or the Act). "The ability of the decedent's successor in interest to recover damages for the decedent's predeath pain, suffering, or disfigurement under [section 15657 of the Act] specifically trumps the general prohibition on such recovery provided at Code of Civil Procedure section 377.34. [Citation.] But it is also expressly subject to the dollar amount limitation of Civil Code section 3333.2—a maximum of $250,000 for noneconomic losses in an action for injury against a health

7

care provider based on professional negligence." (*Quiroz, supra,* 140 Cal.App.4th at p. 1265.)

The Elder Abuse Act provides for heightened remedies when the decedent's successor in interest proves, by clear and convincing evidence, that—as relevant here—the defendant is liable for "neglect" and "has been guilty of recklessness, oppression, fraud, or malice." (Welf. & Inst. Code, § 15657, subds. (a) & (b); *Quiroz, supra,* 140 Cal.App.4th at p. 1265.) The Act defines "neglect" as "[t]he negligent failure of any person having the care or custody of an elder . . . to exercise that degree of care that a reasonable person in a like position would exercise." (Welf. & Inst. Code, § 15610.57, subd. (a)(1).) "Neglect includes, but is not limited to, all of the following: [¶] (1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter. [¶] (2) Failure to provide medical care for physical . . . needs. . . . [¶] (3) Failure to protect from health and safety hazards. [¶] (4) Failure to prevent malnutrition or dehydration." (*Id.*, subd. (b)(1)-(4).) "[T]he Legislature intended the Elder Abuse Act to sanction only egregious acts of misconduct distinct from professional negligence." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 784.)

The statutory rule permitting recovery under the Elder Abuse Act by the victim's successor in interest or heirs "does not affect or expand the type of damages recoverable by a decedent's heir in a wrongful death action in which the plaintiff seeks compensation *for his or her own injuries*, which are separate and distinct from the decedent's predeath injuries for which compensation is sought in a survivor action." (*Quiroz, supra,* 140 Cal.App.4th at p. 1265. See 6 Witkin, *supra*, Torts, § 1865.) In other words, distinct from a survivor claim under the Act,

8

a cause of action for wrongful death does not permit a decedent's heir to seek recovery for his or her own injuries based on a violation of the Act that damaged the decedent. (*Quiroz,* at p. 1269.) Accordingly, here, the heirs cannot seek recovery in their own wrongful death claim for RCBH's violation of the Act in its treatment of—or failure to treat—Mahmood.[7]

## 2. **Ruiz** *and section 1295*

In *Ruiz, supra,* 50 Cal.4th 838, our Supreme Court addressed this issue: "[W]hen a person seeking medical care

---

[7] The majority notes *Quiroz* had to do with the statute of limitations. (Maj. Opn. *ante*, at p. 12, fn. 5.) True. It did. However, the majority does not contend the *Quiroz* court's explanation of the governing law on wrongful death claims and elder abuse claims was dicta, or inaccurate in any way. Nor could it. To determine whether the untimely survivor cause of action for elder abuse asserted by the decedent's mother related back to the date of her timely filed wrongful death claim on her own behalf—" 'based on the same underlying facts' " (*Quiroz, supra,* 140 Cal.App.4th at pp. 1262, 1270)—the *Quiroz* court had to determine who exactly was entitled to bring each of those claims. The court stated, "Consistently with established law, we hold that the survivor cause of action pleaded a different injury than the wrongful death cause of action. Consequently, the survivor claim does not relate back to the date of the timely filed wrongful death claim and it is therefore barred by the statute of limitations." (*Id.* at p. 1262.) The court further held the mother was "not entitled to heightened remedies available under the Elder Abuse Act in conjunction with her own wrongful death claim." (*Ibid.*)

This is precisely what Mahmood's heirs are attempting to do here: recover for the elder abuse of Mahmood in *their own* wrongful death claim. And the same "established law" the *Quiroz* court cited prohibits them from doing so.

9

contracts with a health care provider to resolve all medical malpractice claims through arbitration, does that agreement apply to the resolution of wrongful death claims, when the claimants are not themselves signatory to the arbitration agreement?" (*Id*. at p. 841.)  The court concluded the answer was "yes," at least where "the language of the agreement manifests an intent to bind [those] claimants." (*Ibid*.)

In *Ruiz*, the decedent's heirs sued his doctor and others, alleging the defendants "failed to adequately identify and treat [decedent's] hip fracture[,] resulting in complications, and eventually his death." (*Ruiz, supra*, 50 Cal.4th at pp. 841-842.) They alleged claims for medical malpractice and wrongful death. The decedent had signed an arbitration agreement that expressly stated it bound " 'all parties whose claims may arise out of or relate to treatment or service provided by the physician[,] including any spouse or heirs of the patient.' " (*Ibid*.)

The high court quoted section 1295, noting its purpose was " 'to encourage and facilitate arbitration of medical malpractice disputes. . . .  Accordingly, the provisions of section 1295 are to be construed liberally.' " (*Ruiz, supra*, 50 Cal.4th at pp. 843-844.) The court stated, "[I]t is clear that section 1295 was intended to include the arbitration of wrongful death claims." (*Id*. at p. 849.) The court noted, "In light of the purpose and scope of the statute, it is not surprising that section 1295 does not distinguish between malpractice claims asserted by the patient or the patient's estate, and wrongful death claims arising out of alleged malpractice committed against the patient." (*Id*. at p. 850.)

Justice Moreno, on behalf of the court, noted it was the " 'perceived crisis regarding the availability of medical malpractice insurance' " that led to the Legislature's enactment

10

of the Medical Injury Compensation Reform Act of 1975 (MICRA) (Stats. 1975, 2nd Ex. Sess. 1975-1976, ch. 1, § 26.6, pp. 3975-3976). (*Ruiz*, *supra*, 50 Cal.4th at p. 843.) Justice Moreno stated it was "clear" that MICRA applies to wrongful death actions arising from medical malpractice. (*Id*. at p. 850.) The court observed, "[I]f a spouse or adult children were permitted to litigate wrongful death . . . claims, 'the purpose of section 1295 would be defeated.' " (*Id*. at p. 851.)

### 3.    **Daniels *and* Avila**

The heirs rely on *Daniels* and *Avila*. *Daniels* was a lawsuit by an elderly woman's surviving heir against "a residential care facility for the elderly." (*Daniels*, *supra*, 212 Cal.App.4th at p. 676.) The heir asserted survivor claims for negligence, breach of contract, "willful misconduct," and elder abuse under the Elder Abuse Act. (*Id*. at pp. 677-678.) The heir also asserted a wrongful death cause of action on her own behalf. The heir alleged the decedent developed sores and suffered from dehydration and a staph infection. The heir alleged the decedent "died as a result of receiving inadequate care" at the facility. (*Id*. at pp. 676-678.)

The decedent's heir had signed an arbitration agreement on the decedent's behalf as her "attorney in fact," but the heir had not signed "in her personal capacity." (*Daniels*, *supra*, 212 Cal.App.4th at p. 676.) The agreement did not comply with the requirements of section 1295. (*Daniels*, at pp. 683-684.) Nor did the agreement "manifestly intend[ ] to bind third party wrongful death claimants," referring only to " 'your' claims." (*Id*. at p. 683.)

The *Daniels* court acknowledged our Supreme Court's decision in *Ruiz*, but said it was "distinguishable because [it] involved [an] arbitration agreement[ ] governed by section 1295."

11

(*Daniels*, *supra*, 212 Cal.App.4th at p. 681.)  The court stated it "disagree[d] that *Ruiz* should be extended to arbitration agreements . . . that are entered into with a person other than a health care provider for claims other than medical malpractice." (*Id*. at p. 683.)  The *Daniels* court discussed at length, and relied on, *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, a case that predated *Ruiz*.  (*Daniels*, at p. 681.)

In *Avila*, a decedent's son, who also held a power of attorney for his father, sued a long-term acute care hospital for negligence, elder abuse, and wrongful death.  The decedent had died within five days of his admission to the facility.  The complaint alleged "neglect" based on a feeding tube becoming dislodged and resulting in a heart attack.  (*Avila*, *supra*, 20 Cal.App.5th at pp. 838-839.)  The decedent's son had signed an arbitration agreement on his father's behalf; it covered " 'any dispute as to medical malpractice' " as well as " 'any legal claim or civil action arising out of or relating to your hospitalization.' " (*Id*. at p. 838.)

The complaint alleged causes of action for (1) " 'negligence/ willful misconduct' " and (2) "elder abuse and neglect" on behalf of the decedent's estate as well as on behalf of the heir "individually."  A third cause of action alleged wrongful death on behalf of the heir only.  (*Avila*, *supra*, 20 Cal.App.5th at pp. 838-839.)  The trial court denied the defendants' petition to compel arbitration and the appellate court affirmed.  (*Id*. at p. 837.)  Citing *Daniels*, the court said *Ruiz* was not "controlling" because the "primary basis" for the heir's wrongful death claim was elder abuse under the Act rather than professional negligence.  (*Avila*, at p. 842.)  The court observed that the

12

complaint's allegations "could be categorized as professional negligence as well as elder abuse," and there was "at least some overlap between the two." (*Id*. at p. 843.)

However, the court continued, the complaint alleged a " 'conscious and continued pattern of withholding the most basic care and services,' which included a lack of monitoring, supervision, assistance, and other adequate care and services." (*Avila, supra*, 20 Cal.App.5th at p. 843.) "[N]eglect" under the Act " ' "refers not to the substandard performance of medical services but, rather, to the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults . . . to carry out their custodial obligations.' [Citation.] Thus, the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." ' " (*Ibid*.)

The *Avila* court did not cite or address *Quiroz* nor did it discuss the governing law that precludes an heir from filing survivor claims for "negligence/willful misconduct" and "elder abuse and neglect" on his own behalf as well as on behalf of the estate. Instead, the court stated, "Both parties [the estate through decedent's successor in interest and the heir in his individual capacity] are litigants in both the survivorship and wrongful death claims. Those claims involve the same set of operative facts. If the survivorship claims were arbitrated while the wrongful death claim was litigated, there is a strong possibility of inconsistent rulings." (*Avila, supra*, 20 Cal.App.5th at p. 845.)

4. **Ruiz *and section 1295 control this case***

In my view, *Avila* and *Daniels* do not control this case. First, in both of those cases, the appellate courts emphasized

13

the trial courts had discretion under section 1281.2(c) to refuse to order even the arbitrable claims to arbitration. (*Avila, supra*, 20 Cal.App.5th at pp. 837, 839, 845; *Daniels, supra*, 212 Cal.App.4th at pp. 676, 679-680, 686-687.) The FAA did not apply to the arbitration agreements in either of those cases. In *Avila*, the agreement did "not even mention the FAA, much less adopt its procedural rules." (*Avila*, at p. 841.) The *Daniels* court said nothing about the FAA but, as noted, the agreement there did not meet section 1295's requirements. (*Daniels*, at pp. 683-684.) The courts in both cases had substantial concerns about the risks of "conflicting rulings on common questions of law and fact if the survivor claims but not the wrongful death claim were ordered to arbitration." (*Id*. at p. 677; see also *id*. at pp. 686-687 ["danger of inconsistent rulings" "given that [both survivor claims and wrongful death claims] are based on the allegation that [decedent] received inadequate care at [the facility]"]; *Avila*, at p. 845 ["If the survivorship claims were arbitrated while the wrongful death claim was litigated, there is a strong possibility of inconsistent rulings."].)

Here, the opposite is true. The trial court correctly held the FAA governs the arbitration agreement here. Accordingly, the court rejected the heirs' request that it exercise discretion under section 1281.2(c) to refuse to send *any* of the claims to arbitration. Unlike *Avila* and *Daniels*, the agreement here complied to the letter with section 1295[8] and the parties

---

[8]    The agreement contained the following language in bold red type: "NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR

14

expressly agreed it would bind "all parties, including the Resident's representatives, executors, family members, and heirs who bring any claims individually or in a representative capacity."  Here—in contrast to *Avila* and *Daniels*—the risk of inconsistent rulings arises from the fact that an arbitrator will decide the survivor claims for negligence and elder abuse while a jury will decide the wrongful death claim, which the heirs now say they base on the very same elder abuse of Mahmood alleged in the survivor claim.

And that is the biggest problem of all:  the heirs' effort to avoid arbitration by dressing up an elder abuse claim—brought on their own behalf rather than the estate's—as a claim for wrongful death.  In their brief, the heirs state the "primary basis for [their] wrongful death claim arises under the elder abuse law, not under professional negligence."  If this tactic were to succeed, it would turn the governing law set forth in *Quiroz* on its head and defeat the goals the Legislature had in mind when it passed section 1295.

To say the heirs' amended complaint is not a model of clarity is an understatement.  The heirs allege Mahmood's death was caused by RCBH's "negligent conduct" and its employees

<hr>

A COURT TRIAL.  SEE ARTICLE 1 OF THIS CONTRACT." (See § 1295, subd. (b).)  The agreement also contained this language in the same typeface:  "NOTICE:  BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ALL CLAIMS, INCLUDING CLAIMS OTHER THAN A CLAIM FOR MEDICAL MALPRACTICE, DECIDED BY ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL AND YOU AGREE THAT NO PARTY SHALL ADJUDICATE ANY CLAIM ON A CLASS ACTION BASIS."

"provided negligent care" and "inadequate care." In their wrongful death cause of action, the heirs allege RCBH "owed Mahmood a duty of care" which it "breached" "because it provided inadequate care." That certainly sounds like professional negligence. The survivor claim for "negligence" contains similar allegations.

In the survivor action for elder abuse, the heirs allege "reckless and/or fraudulent behavior" by RCBH. The "fraudulent behavior" seems to consist of asking Mahmood to sign the arbitration agreement. As for "recklessness," the heirs allege an RCBH employee's inability to open a door when Mahmood's son came by to drop off a sweater "illustrate[s] RCBH's recklessness." The heirs also allege RCBH's "failure to prevent Mahmood's dehydration was reckless." But, they continue, "it is equally possible that RCBH's employees were simply indifferent to the charge of their patients."

Is "indifference" the same as negligence? Is it recklessness? "[I]ncompetence" is not recklessness. "Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' " (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31-32. See CACI No. 3113 ["Recklessness" under the Elder Abuse Act requires the defendant "knew it was highly probable that [its] conduct would cause harm and [it] knowingly disregarded this risk. 'Recklessness' is more than just the failure to use reasonable care."].) Do the heirs allege RCBH staff intentionally refused to give Mahmood fluids?

16

The word "neglect" did not appear in the heirs' original complaint. In the amended complaint, the word "neglect" appears seven times and the word "neglected" once. The heirs first use the word in their allegation that RCBH ignored Mahmood's advance healthcare directive. The heirs then allege, "RCBH's staff neglected Mahmood's physical care with reckless indifference by failing to prevent his dehydration." In the remaining paragraphs, the heirs allege RCBH's neglect "may also have been a contributing factor toward[ ] his eventual death," caused him to suffer emotional distress as well as pain and suffering and to incur medical expenses, and entitled him to punitive damages and attorney fees and costs.

To be sure, neglect can constitute elder abuse under the Act. As noted, the Act sets forth a number of definitions, including the failure to provide medical care and the failure to prevent dehydration. (Welf. & Inst. Code, § 15610.57, subd. (b)(2), (4).) Mahmood's estate is absolutely entitled to assert a cause of action under the Elder Abuse Act. As the trial court correctly found, that cause of action is subject to the arbitration agreement Mahmood signed. What the law does not permit, however, is for the heirs to assert their own claim for RCBH's neglect of Mahmood under the Act—whether or not entitled "wrongful death"—and thereby defeat the arbitration of their wrongful death claim, a cause of action Justice Moreno described as "clear[ly]" subject to section 1295. (*Ruiz*, *supra*, 50 Cal.4th at p. 849.)

RCBH has not cited *Quiroz* or the legal rule it explains. Nor does it even mention *Avila* or *Daniels* in its briefs, much less address whether they apply to this case. RCBH argues only that the heirs' wrongful death claim "sounds in professional

17

negligence."  RCBH overlooks the allegations of "neglect" the heirs have added to their amended complaint.

In my view, however, notwithstanding these failings on RCBH's part, we should follow the well-established, governing law.  As the *Quiroz* court noted, our Legislature intended the enhanced remedies under the Elder Abuse Act "to apply to actions by or on behalf of *victims* of elder or dependent care abuse.  The legislative history does not reveal any intent to apply the Act to a wrongful death action brought by a decedent's heir on his or her own behalf." (*Quiroz*, *supra*, 140 Cal.App.4th at p. 1283.)  Nothing in the Act's scope or character

> "means that a relative or an heir of an elder or dependent adult has an independent claim under the Act or that such a person may recover statutory heightened remedies in his or her own wrongful death claim.  Under the Act, these claims and remedies are afforded only to *victims* of elder or dependent adult abuse.  In the event of the victim's death, the cause of action survives, in which case it is or becomes a survivor action pursued by the personal representative of the estate or the decedent's successor in interest *on the decedent's behalf*."
> (*Id*. at p. 1284.)

In short, the law does not permit Mahmood's heirs to sue for the "neglect" of their family member on an elder abuse theory, whether they term that claim elder abuse or wrongful death.  Once the elder abuse theory is stripped away from the heirs' wrongful death claim, all that remains are allegations of

18

negligence.  Accordingly, the heirs' cause of action for wrongful death falls under *Ruiz* and section 1295, and the trial court erred in not granting the petition to compel arbitration on that claim.


EGERTON, J.